# Ehrhart Whissler *v.* Morris Walsh, Appellant.

*Negligence—Contributory negligence—Runaway horse—Disposition of animal—Charge of court.*

In an action to recover damages for personal injuries, it appeared that plaintiff, a wagon-maker, was, at the time of the injury, at work on a wagon in front of a shop on the edge of a cart-way of a street.   The evidence indicated that he was sitting between the hind wheels at work upon the axletree.   While so occupied defendant's horse came running down the street dragging a cart, which struck the wheels between which plaintiff was working and injured him.   *Held,* that the question of plaintiff's contributory negligence was for the jury and not the court.

The evidence for plaintiff tended to show that the horse caught his foot in the belly-band of his harness and that his driver did nothing to extricate him, or prevent him from starting away.   Plaintiff asked the judge to say " that it did not make any difference what the disposition of the horse was."   The judge said: " Of course if there was negligence on the part of the driver it would be no difference what the disposition of the horse was, if the horse ran off on account of the negligence of the driver."   *Held,* not to be error.

Argued Oct. 22, 1894.   Appeal, No. 26, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1890, No. 452, on verdict for plaintiff.   Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before WHITE, J.

The facts appear by the charge of the court below, which was in part as follows :

" The first question is : Was the defendant guilty of any neg ligence? And that, of course, is as to the driver, whether he was guilty of negligence by which the horse ran away. Ordi narily a runaway horse on the street would indicate negligence ; the presumption ordinarily would be that a horse that runs off on the street has been permitted to run off through the negli gence of somebody. In this case you have the testimony of the driver and of the owner, Mr. Walsh. It seems that the driver had emptied a load of coal and had gotten it into the cellar and had turned the horse around a little and gone to put on the end board. He says the horse appeared to start ; he halloed to him and the horse gave a jump ; he halloaed to him again and the horse did not stop. He at first thought the horse was going towards the stable, across the street, I believe, or near where the coal had been emptied ; but in place of going to the stable he went down the street or alley. He said he ran after the horse, and that the horse at first had one of his hind feet in the belly-band, and from the testimony he got his foot out, or the belly-band must have been broken, before the accident occurred to the plaintiff in this case.

" Now, was the driver guilty of negligence? If the belly-band is in good order, ordinarily, and buckled up as it ought to be, would a horse get his hind foot in it in fly time ? It seems it was a period when the flies were bad, and the horse may have been stamping with his feet. Then, again, when the horse started, did the driver do what he ought to have done to stop him ? If he saw that the horse had his foot in the belly-band what would a driver do ? Of course it would be his duty, as quickly as possible, to get to the head of his horse. Did the driver do what he ought to have done ? What an ordinarily prudent and careful driver would have done ? If he was negli gent in that respect, and in consequence of that neglect the horse got a start and ran off, then there was negligence. In the other aspect of the case, if the driver did all that he could

do, all that an ordinarily prudent man would have done under the circumstances to stop his horse, and failed to do it, why then he was not guilty of negligence.

" If you find negligence on the part of the driver, then you pass to the second question, that is : Was there negligence on the part of Mr. Whissler, the plaintiff? Now this wagon that was being repaired was out on the street. The plaintiff says that one wheel was either on the pavement or near the curb, and the other wheel out on the paved street, and he himself was out on the street; he says in the gutter under the wheel. Now ordinarily, gentlemen, no mechanic has any right to leave a wagon out on the street; no blacksmith or wagonmaker has any business to leave his wagons out on the street; he ought to have his shop, and repairs should be done in the shop, not on the street; the streets are not for that purpose, and the street cannot be made a wagonmaker's shop or a blacksmith's shop; the streets are for the traveling public ; and yet, if some little accident occurs to a wagon or buggy, and it can be repaired in a very short time, I cannot say, as a question of law, that it would be negligence to undertake to repair that on the street; that depends largely upon circumstances ; it depends upon the character of the street; whether it is very much traveled ; whether it would be imprudent, under the circumstances, to undertake to do anything of that kind on the side of the street. [The question then is whether this plaintiff, being a mechanic working at the wagon to repair it, and knowing that that wagon was out on that street, and under the surrounding circumstances, was guilty of imprudence, of negligence, or of carelessness in going under those wheels to repair it.] [3] Would an ordinarily prudent man have gone under those wheels, out on the street there, to repair them at that time and place ? If so, then he was not guilty of negligence ; but if an ordinarily prudent man would not have done it, then he is guilty of negligence, because that is negligence—what an ordinarily prudent man would not do.

" [By Mr. Ammon: There is only one thing I would have liked your honor to have said to the jury, that it did not make any difference what the disposition of the horse was. By the Court: Of course if there was negligence on the part of the driver it would be no difference what the disposition of the

horse was, if the horse ran off on account of the negligence of the driver.] " [2]

Defendant's request for binding instruction was refused. [1]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) instructions, quoting them.

*W. A. Challener* and *John R. Harbison, Clarence Burleigh* with them, for appellant.—It was incumbent upon plaintiff to assume the burden of proving defendant's negligence : Brown v. Collins, 53 N. H. 442; Cooley on Torts, 342; McIlvaine v. Lantz, 100 Pa. 586, is the exceptional case of an arrival of an animal of a known mischievous disposition.

Plaintiff was guilty of contributory negligence. It was a question for the court: Harris v. Commercial Ice Co., 153 Pa. 278; Robb v. Connellsville Borough, 137 Pa. 42.

*Samuel A. Ammon, Franklin A. Ammon* with him, for appellee.—Negligence is presumed when a horse is found running at large on a public street: Overington v. Dunn, 1 Miles, 39 ; Hummell v. Wester, Brightley, 133 ; McIlvaine v. Lantz, 100 Pa. 586 ; Traction Co. v. Bernheimer, 125 Pa. 615 ; Edwards v. R. R., 148 Pa. 531 ; Henry v. Klopfer, 147 Pa. 180.

The disposition of the horse should be disregarded, because accidents will happen to the best natured horse in the world and cause him to run away and do damage : Henry v. Klopfer, 147 Pa. 180 ; Overington v. Dunn, 1 Miles, 39.

Even if plaintiff violated an ordinance or law in leaving a wagon on the street and working under it, either on the sidewalk or the street, it would constitute no defence, for this would only be a condition and not a cause of the accident, and is, therefore, not contributory negligence: Gannon v. Wilson, 18 W. N. 7 ; Brown v. Lynn, 31 Pa. 510 ; Steele v. Burkhardt, 104 Mass. 59 ; Greenwood v. Callahan, 111 Mass. 298 ; Mohney v. Cook, 26 Pa. 342 ; Piollet v. Simmers, 106 Pa. 95 ; Gray v. Scott, 66 Pa. 345 ; Creed v. R. R., 86 Pa. 145.

The question of negligence was properly submitted to the jury : R. R. v. McElwee, 67 Pa. 311.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895 :

The plaintiff was injured in consequence of the running away of the defendant's horse in September, 1889. He was a wagon-

maker in the employ of Deisenroth, whose shop was at the corner of Eighth street and Cabot way, in that part of the city of Pittsburg known as the South Side.

At the time of the injury he was at work upon the running gears of a wagon in front of the shop and on the edge of the cartway of Eighth street. The evidence would indicate that he was sitting down between the hind wheels at work upon the axletree. While so occupied the horse came running down Eighth street dragging a cart and turned in at one of the doors of the shop. The cart struck the wheels between which the plaintiff was and he was injured. His right to recover depended upon whether the running away of the horse was chargeable to the negligence of the defendant's driver, and, if so, whether his own negligence contributed to his injury. Both of these questions were submitted to the jury under general instructions of which little complaint is made. At the close of the charge the plaintiff's counsel stated to the court, " There is only one thing I would have liked your honor to have said to the jury, that it did not make any difference what the disposition of the horse was." The learned judge replied, " Of course if there was negligence on the part of the driver it would be no difference what the disposition of the horse was, if the horse ran off on account of the negligence of the driver." This was not a responsive answer, and if the verdict had been in favor of the defendant we should probably have the plaintiff before us complaining that his point was not fully answered. The defendant cannot urge that objection, and unless the answer was wrong upon the facts of this case he was not injured by the instruction. Looking at the evidence and the charge of the learned judge it is evident that the case was tried upon the theory that the driver did not exercise ordinary prudence after he discovered that the horse was in trouble and was starting away. The judge said to the jury upon this subject, " Then again when the horse started did the driver do what he ought to have done to stop him? If he saw that the horse had his foot in the belly-band what would a driver do? Of course it would be his duty as quickly as possible to get at the head of the horse. Did the driver do what he ought to have done? What an ordinarily prudent and careful driver would have done? If he was negligent in that respect and in con-

sequence of that negligence the horse got a start and ran off, then there was negligence. In the other aspect of the case if the driver did all he could do, all that an ordinarily prudent man would have done under the circumstances, to stop his horse and failed to do it, why then he was not guilty of negligence."

The answer complained of was made with the instruction just quoted in mind, and it must in justice to the learned judge be considered in the same manner. It then becomes a direction to the jury that if, upon this question of negligence on the part of the driver, they find for the plaintiff, the disposition of the horse became wholly unimportant. This was right. If the jury found that the driver failed to do what an ordinarily prudent driver would have done for the relief of his horse and for its control when he saw its hind foot entangled in the harness and the horse trying to move off on three feet, the disposition of the horse was immaterial. It was in trouble. The driver saw it. If he failed to go to its relief and do what common prudence required of him in view of a situation known to him to be an unusual and troublesome one, he was guilty of negligence for which his employer must respond. Cases may arise in which the disposition of a horse, as known by the driver, should be taken into account in determining whether the measure of care used in a given case is such as a reasonably prudent person would take under the circumstances, but upon the facts of this case and in view of the questions raised on the trial, we think the learned judge committed no error in his answer to the oral request submitted by plaintiff's counsel. The question of contributory negligence was raised upon the circumstance that the work at which the plaintiff's employer had set him was outside of the shop and within the bounds of the cartway. This circumstance was called to the attention of the jury and the question of contributory negligence fairly submitted to them.

The assignments of error are overruled and the judgment affirmed.