# Reed, Appellant, *v.* Snyder.

*Negligence—Automobiles—Fright of horse—Case for jury.*

In an action against the driver of an automobile to recover for personal injuries, it appeared that plaintiff driving in a buggy with his wife and small child, approached, at a point in a narrow road, an automobile driven by defendant. Plaintiff threw the lines to his wife, descended to the ground, and without looking at, or speaking to the defendant, took the head of his horse, which had become restless. The defendant started to proceed, when immediately a volume of vapor as large as a hat was spurted from a tube in the rear axle, under and against the horse, accompanied by a hissing sound and strong odor of gasoline. The horse became unmanageable, overturning the buggy and injuring the wife. The horse was eighteen years old, and prior to the accident trustworthy. *Held,* that the case was for the jury.

Argued Oct. 30, 1908.   Appeal, No. 196, Oct. T., 1908, by plaintiffs, from order of C. P. Clearfield Co., Sept. T., 1907, No. 107, refusing to take off nonsuit in case of Edgar B. Read and Lavina Read v. S. I. Snyder and Clark Snyder. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Trespass to recover damages for personal injuries.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing to take off nonsuit.

*Singleton Bell,* with him *Smith V. Wilson* and *Howard B. Hartswick,* for appellant, cited: Obold v. Traction Co., 19 Pa. Superior Ct. 326.

*David L. Krebs,* with him *A. M. Liveright,* for appellee, cited: Hazel v. Pass Ry. Co., 132 Pa. 96: Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306.

OPINION BY ORLADY, J., February 26, 1909:
This action of trespass was brought to recover damages for

injuries sustained by the plaintiff and his wife, which were alleged to have been caused by the negligence of the defendant. The facts are confined within a narrow compass and are substantially as follows: The plaintiff was driving in a buggy on a public highway, having with him his wife and a small child, two years of age. The defendants were approaching in an automobile, and when the plaintiff saw the automobile, he gave the lines to his wife, and got out to stand at the head of the horse, which at the time showed signs of fright. The roadway was about sixteen feet in width, and after the plaintiff led his horse off to one side of the road, the defendants approached with the auto until opposite the horse, and then stopped. Neither party spoke, and the defendants started to proceed. Immediately a volume of vapor, described as being about as large as a hat, was spurted out from a tube in the rear axle, under and against the horse, accompanied by a hissing sound, and a strong odor of gasoline. The horse became unmanageable, overturned the buggy, throwing out the wife and child, and attempted to run away. The plaintiff retained his hold on the horse, succeeded in stopping it, and for the injuries he then received, this action is brought.

The testimony of the eyewitnesses called by the plaintiff agree with him in all substantial particulars. The horse was about eighteen years old, and prior to this accident was regarded as trustworthy and not easily frightened, but when the automobile came to a standstill, the horse showed signs of nervous tremor and fright. It was, however, under full control, until the automobile suddenly started with the accompanying steam, noises and odors, which induced the fright.

The court below held that under the circumstances attending the case, as shown by the testimony, the defendant could not have been expected to do more than was done; that the plaintiff by his failure to speak as well as by his actions, invited the automobile to pass him, as he was holding his horse, rather than that he should have time to lead his horse past the automobile, and that he could have protected himself by requesting the defendants to stand still until he had passed the automobile in safety; not having done this, he took the risk of having the

automobile pass him. We feel that this is too complicated a question to be passed on as a matter of law. Each of the parties had rights on that highway, and each was required to exercise toward the other the duty of reasonable care according to the circumstances, and each had a right to expect that such reasonable care would be exercised by the other, and to rely on this in determining his own manner of using the road. The defendants must necessarily have seen the nervous horse, the man at its head, the mother and child in the buggy, and must certainly have known that when the machine over which they had full control would be started by their direction, the vapor would be ejected in the direction of the horse, that a noise would be produced, with an accompanying odor of gasoline. A jury would be warranted in concluding that they had full control of their machine, and should have known the hazard following their progress, which could have been relieved of all possible danger by remaining stationary for but a moment. The fact that the plaintiff did not ask them to remain stationary does not necessarily imply an invitation to proceed; it might as reasonably have been his expectation that they would allow him time to take his horse out of that place of danger. Whether their act was the direct cause of the uncontrollable fright of the horse, and whether they should have anticipated such a result was purely a question of fact and not one of law. At least the character of the road, the relation of the parties to each other and the conduct of each, the effect reasonably to be expected by the starting of the machine, with the noisy emission of vapor against the horse, the fitness of the horse, the control over the machine and the horse, were matters for the consideration of the jury, in determining the negligence of the defendant, and the contributory negligence of the plaintiff. The case is quite similar in its facts to that of Obold v. Traction Company, 19 Pa. Superior Ct. 326, and the rule of law applied in that case, is rightly invoked in this one. If the driver of the automobile failed to do what an ordinarily prudent driver would have done under like circumstances a jury would be warranted in finding that he was negligent, and if his negligence was the cause of the plaintiff's injury, he should be held liable therefor: Whissler v.

Walsh, 165 Pa. 352.   The duty of a driver, as defined by the Act of April 19, 1905, P. L. 217, is reciprocal in requiring the operator or user of a motor vehicle and the driver of another vehicle about to be passed, to signal the other for the purpose of warning each one, so that special care may be exercised, but independent of this statute, the duty of each driver is clearly declared in many well-considered cases.   Each is required to use his natural senses, as well as the plain common sense of everyday observation and experience in avoiding injury to other users of the highway.   The act of 1905 only prescribed that certain things should be done, but did not exclude other reasonable precautions.

The judgment of the court in refusing to take off the nonsuit is reversed, the record to be remitted to the court below, with a venire facias de novo.