## Richmond.

## ROSENBAUM HARDWARE COMPANY V. PAXTON LUMBER COMPANY.

### January 16, 1919.

1. SALES—*Contract—Printed Statements on Seller's Invoices and Letter Heads as Part of Contract.*—Printed statements upon invoices and letter heads of the seller, in the absence of some specific reference thereto, do not qualify an absolute contract of purchase arising from an offer and the acceptance thereof contained in such a letter.

2. SALES—*Acceptance—Inspection.*—In a case involving the sale of a car load of lumber, where it was necessary to unload a car in order to examine its contents, the payment of the freight and the unloading of the car are not construed as an acceptance. The purchaser has the right to rely upon the obligation resting upon the seller, under his contract, to ship the commodity of the character and quality specified in and required by the contract, and is entitled to a reasonable time in which to unload the car and to make the examination or inspection before he is required to accept. A vendee who orders goods from a distance, to be shipped in carload lots, who is assured of their quality, condition and fitness, has the right to reply upon his contract, and to proceed to unload the car upon the assumption that the contract has been performed.

3. SALES—*Acceptance—Inspection—Instructions.*—In an action for the price of a carload of lumber, the court instructed the jury that it was the duty of the purchaser to have the car of lumber inspected immediately on its arrival, and before acceptance by it. The use of the word "inspection" in this connection is possibly misleading. It may have been construed by the jury either to mean that the defendant should have examined the lumber, or that there should have been a formal inspection made by some duly authorized inspector of lumber. In either event it is erroneous and misleading. The purchaser was entitled to a reasonable time within which to examine the lumber, that reasonable time depending upon the circumstances of the case.

4. SALES—*Instructions—Acceptance.*—In an action for the price of

a carload of lumber, the court instructed the jury that if the purchaser accepted the car of lumber and tendered it to its customer, they should find for the seller.

*Held:* That the instruction was misleading and harmful under the facts of the case, because there was no evidence from which the jury could possibly have inferred that the defendant had accepted the lumber at the time it was first examined. On the contrary, the record clearly showed that it then refused to accept it and promptly notified the plaintiff of the reasons for such refusal.

5. SALES—*Instructions—Appeal and Error—Harmless Error.*—In an action for the price of a carload of lumber, an instruction which, while not as clear as it should have been, in substance supported the defendant's theory of the case, and directed a verdict in its favor, if the jury should believe the evidence upon which it relied, was harmless as against the defendant.

6. SALES—*Instructions—Ignoring Other Facts in Case.*—In an action for the price of a carload of lumber, an instruction that if the jury believed that after the car had been delivered and inspected, the seller instructed the purchaser to dispose of the lumber for the account and to the best advantage of the seller, the purchaser was not deemed to have accepted the car of lumber under its contract, and the jury should find for the defendants, was requested by defendant and refused by the court.

*Held:* That, though the defendant was entitled to have the jury instructed, that it was not deemed to have accepted the car of lumber under the circumstances recited in the instruction, the court rightly refused to give it because it instructed the jury to find for the defendant, ignoring all of the other controverted facts in the case.

7. SALES—*Acceptance—Instruction—Instruction Not Supported by the Evidence.*—In an action for the price of a carload of lumber, the court instructed the jury that if they believed from the evidence that the purchaser delivered the car of lumber in question to its customer without inspecting it, that constituted an acceptance.

*Held:* That this instruction was erroneous as assuming that there was evidence tending to prove that the seller delivered the car to the purchaser, and told the jury that that constituted an acceptance, whereas the car was transported directly from the seller to the purchaser's customer for examination, but was never delivered to such purchaser, because he refused to accept it, and the instruction entirely ignored the contract which the seller was under obligation to perform.

8. SALES—*Burden of Proof.*—If the seller of a carload of lumber waived its right to insist upon the purchaser's acceptance of

the lumber, it could not recover the purchase price unless the waiver was made in ignorance of all of the pertinent facts, and if the seller retracted its waiver for good cause, it might recover upon proof that the lumber was in fact substantially of the character and quality which it was under contract to deliver. The burden of proof, however, is upon the seller to show to the satisfaction of the jury that the lumber was of such quality, and the mere failure of the defendant to have it inspected could in no event relieve it of this burden.

Error to a judgment of the Corporation Court of city of Newport News, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Wm. A. Graff* and *J. Winston Read,* for the plaintiff in error.

*Baird & Swink,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This controversy arises out of a contract which is evidenced by two letters, one dated October 22, 1915, from Newport News, Va., addressed by the Rosenbaum Hardware Company (hereafter called the defendant) to the Paxton Lumber Company (hereafter called the plaintiff), at Bristol, Tennessee, reading thus:

"Your telegram of this date received. You will please enter our order for one carload of 4x6 white oak for bending purposes to be delivered within 30 days from this date. Specifications as follows:

"Quality: To be selected white oak, straight grained and free from knots, heart centers, shake, wormholes, sap and other defects except as noted below.

"Sizes: To be properly manufactured, cut to full size of 4 inch x 6 inch and to be in lengths of 8-12-14 and 16 ft. to average 14 feet long.

"Defects allowed: Some pinworm will be allowed providing it does not damage the piece for the purpose for which it is intended.

"At $60.00 per M feet on the Newport News freight rate basis. We desire this lumber shipped to our order at Norfolk, Va., and should there be any difference in the Norfolk and Newport News rate of freight to charge or credit as the case might be."

And the reply thereto, dated October 29, 1915, reading thus:

"Yours of the 26th duly received, and we are pleased to enter your order for:

"1 car 4x6 white oak for bending purposes; $60.00. Delivered to Newport News rate of freight.

"We have marked up shipping instructions as follows:
Rosenbaum Hardware Co.,
Norfolk, Va.
N. & W. delivery.

"We note your request to ship a small car by November 4th, which we are taking up with our mill but will be unable to hear from them before Monday.

The lumber reached Norfolk in due course, was sent to the United States Navy Yard for use by the government, and was there rejected by the government inspector; whereupon the defendant promptly, on January 18, 1916, wrote as follows to the plaintiff:

"We regret to advise that the 4x6 bending oak that you shipped on car T. P. & W. No. 2142, has been rejected at the Navy Yard, Portsmouth, Virginia. We have not full information regarding this matter, we are writing Mr. McKann by this mail with request that he forward to you full particulars."

And on January 22, 1916, as follows:

"Your letter of the 21st instant received. The Navy Yard people rejected the car of bending oak on account of worm holes, rots and knots.   Our Mr. Poarch looked at this stock and from the best information that he could get, not more than one-fourth of this stock would pass. To pick the lumber to get out such a small amount would make it rather expensive and besides would damage the sale of the lumber as a whole.   We believe the best thing to do is to dispose of this lumber as an entire lot, we would like to know what you want us to do in the matter.   In the meantime we hope that you will not forget the fact that the bending oak is urgently needed according to the order placed with you, and unless you can assure us that it will be shipped promptly we will be forced to go on the market and buy this stock against your account."

To which the plaintiff replied on January 26th thus:

"Yours of the 22nd duly received and beg to advise that we had previously cut two cars of this stock which were satisfactory and the car shipped you was cut full to size, straight grained and had very few pin worm holes in it.

"We will ask that you take care of our interest in this matter, having as much of the stock accepted as possible and taking care of the balance so that it can be gone over and disposed of later to the best advantage.

"With reference to the resale you suggest we would hardly know just where to place this, but possibly you would or if the McKann people are used to handling this class of stock they must know some use of the rejects.

"We would be glad to have your best offer covering them.

"The McKann Company advised us under date of the 19th that the Navy Yard would move this stock by January 28th at our expense, if instructions were not given, so that if you can help us in making some satisfactory disposition of the stock, in the meantime, we will appreciate it.

"We wrote you quite plainly sometime back that we had not accepted a second order from you, and it will not be in order for you to buy this stock on the open market and charge it to our account, as you well know."

After having apparently by this letter of January 26th acquiesced in the rejection of the lumber, and it had been transported from the Navy Yard to Newport News, the plaintiff claimed that when the letter of January 26th was written it was without full information as to the character of the inspection which had been made, and that therefore it was not bound by its letter; that the lumber had been accepted by the purchaser; and that in the absence of a proper inspection the defendant owed the full amount of the purchase price.   This claim appears to be partly based on the following printed paragraph, which appears at the top of its letter heads:

"All agreements are contingent upon car supply, strikes, accidents, or other delays from causes beyond our control. No allowance from invoices will be made without certificate of National Hardwood Lumber Association. Quotations subject to change without notice.   Acceptance of orders subject to prior sale."

It is also claimed that if an inspection by a representative of the National Hardwood Lumber Association was unnecessary, then that some other proper inspection should have been made.

[1]   The effect of such printed statements upon invoices and letter heads has been considered, and it is held that such printed matter, in the absence of some specific reference thereto, does not qualify an absolute contract of purchase arising from an offer and the acceptances thereof contained in such a letter. *Summers* v. *Hibbard*, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872.   The question has also been determined in the same way in the case of *Sturm* v. *Boker*, 150 U. S. 312, 37 L. Ed. 1093, 14 Sup. Ct. 99, and in the

recent case of *R. J. Menz Lumber Co.* v. *E. J. McNeeley & Co.*, 58 Wash. 229, 108 Pac. 621, 28 L. R. A. (N. S.) 1011. In this view we concur.

The lumber remained upon the yard of the defendant at Newport News and was the subject of certain other interviews and correspondence between the parties, the effect of which tends to show that the plaintiff insisted upon having a formal inspection and grading of the lumber, and the defendant, while agreeing thereto, never had such inspection made, though there is one letter in the record, dated February 23, in which the defendant states: "We will do our utmost to obtain the best results, but the per cent that will pass for the purpose for which you shipped this lumber is so small it is hardly worth while to try to get the government inspector to accept it. The additional cost of handling and other charges will amount to more than the advance price on what they accepted, in addition to this it will depreciate the balance of the stock to take out the clear stock." And on March 23d a letter which closes the correspondence, in which it is stated: "If possible we would like to get this matter closed up at once and to arrive at the proper inspection for this car of lumber. We suggest that a hardwood inspector, or some inspector that is familiar with hardwood inspection, inspect this stock. If this is satisfactory to you, we will have this done at once. Awaiting your early reply regarding this matter," etc. And to this letter the plaintiff never replied, claiming at the trial that such an inspection had already been agreed upon.

The parol testimony is conflicting, though the plaintiff appears to rely upon its claim that the carload of lumber had been accepted and had never been properly inspected, rather than upon any clear, definite and distinct testimony as to the real character of the lumber.

There was a verdict and judgment in favor of the plain-

tiff for the amount claimed (which was reduced by the court $21.23 for the freight and expenses from the Navy Yard to Newport News), which also included a balance which was due to the plaintiff upon another carload of lumber; for which balance, under the evidence, the plaintiff is clearly entitled to judgment.

The errors assigned are—

[2, 3] 1. That the court give the jury the following instruction: "The court instructs the jury that it was the duty of the defendant to have the car of lumber inspected immediately on its arrival, and before acceptance by it; and if they believe from the evidence that the said defendant accepted the car of lumber and tendered it to their customer, they shall find for the plaintiff, unless the jury believe from the evidence that the case falls under the provisions of instruction 'B'."

It is admitted by counsel for the plaintiff that the instruction is erroneous in telling the jury that it was the duty of the defendant to have the inspection made immediately upon the arrival of the car, but it is claimed that under the facts of this case that error is harmless. We cannot agree with this suggestion. It is noted first that the use of the word "inspection" in this connection is possibly misleading. It may have been construed by the jury either to mean that the defendant should have examined the lumber, or that there should have been a formal inspection made by some duly authorized inspector of lumber. In either event it is erroneous and misleading. In a case like this, where it is necessary to unload a car in order to examine its contents, the payment of the freight and the unloading of the car are not construed as an acceptance. The purchasr has the right to rely upon the obligation resting upon the seller, under his contract, to ship the commodity of the character and quality specified in and required by the contract, and is entitled to a reason-

able time in which to unload the car and to make the examination or inspection before he is required to accept. *Davis* v. *Koenig,* 165 Pa. 352, 30 Atl. 976. A vendee who orders goods from a distance, to be shipped in carload lots, who is assured of their quality, condition and fitness, has the right to rely upon his contract, and to proceed to unload the car upon the assumption that the contract has been performed. *W. T. Adams Machine Co.* v. *Turner,* 162 Ala. 351, 50 So. 308, 136 Am. St. Rep. 28; *Miller* v. *Moore,* 83 Ga. 684, 10 S. E. 360, 6 L. R A. 374, 20 Am. St. Rep. 329; *Haltiwanger* v. *Tanner,* 103 Ga. 314, 29 S. E. 965; *Gould* v. *Stein,* 149 Mass. 570, 22 N. E. 47, 5 L. R. A. 213, 14 Am. St. Rep. 455; *Cook* v. *Gray,* 2 Bush. (Ky.), 121; *Harrigan* v. *Advance Thresher Co.,* 26 Ky. Law Rep. 317, 81 S. W. 261; note *N. Ga. Mill Co.* v. *Henderson El. Co.,* 24 L. R. A. (N. S.) 237.

In *Wiburg & Hannah Co.* v. *U. P. Walling & Co.* (Ky), 113 S. W. 834, involving a sale of lumber, the court said "We should also say that in a case like this, where lumber in carload lots was ordered and delivered, that the purchaser should not be held to have accepted it, or waived his right to reject it, merely because he took it out of the cars for the purpose of inspection, as it could not be inspected without being removed from the cars and each piece of lumber examined." Citing a number of cases.

In *G. I. Frazier Co.* v. *Owensboro S. & B. Co.,* 162 Ky. 310, 172 S. W. 656, this is said: "There can be no doubt but what in a case like the one at bar, where the goods were shipped to the buyer from a distant point, and he had no opportunity to inspect them, he would have a right to take them into possession by virtue of the bill of lading, for the purpose of making an inspection to determine whether or not they were in accordance with the contract of sale, and if the staves did not comply with the contract to reject them, and, in this state of case, the delivery would

not pass the title, unless the intention of the parties was that the title should pass without an inspection."

And in the recent case of *Unadillo Silo Co.* v. *M. A. Hull & Son,* 90 Vt. 134, 96 Atl. 535, this doctrine which is so fully in accord with reason, common sense and custom is approved.

[4] The defendant, then, was entitled to a reasonable time within which to examine the lumber, that reasonable time depending upon the circumstances of the case. The instruction also tells the jury that if the defendant accepted the car of lumber and tendered it to their customer, they should find for the plaintiff. This clause of the instruction is misleading and harmful under the facts of this case, because there is no evidence from which the jury could possibly have inferred that the defendant had accepted the lumber at the time it was first examined. On the contrary, the record clearly shows that it then refused to accept it and promptly notified the plaintiff of the reasons for such refusal.

[5] 2. The defendant also assigns as error the giving of instruction "B," as modified, in these words: "The court instructs the jury if they believe from the evidence that after defendants examined the lumber in question, and the controversy arose between them and the plaintiff as to the failure of the lumber to meet the requirements of the order, that plaintiff, with full knowledge of the facts of the case, instructed the defendants to hold the lumber, and dispose of it for the account and to the best advantage of the plaintiff, the jury shall find for the defendants, and shall allow them all costs and charges reasonably and necessarily expended and incurred by reason of the handling of the car."

While the instruction is not as clear as it should have been, it in substance supports the defendant's theory of the case, and directs a verdict in its favor, if the jury shall

believe the evidence upon which it relies, and we find no harmful error therein against the defendant.

[6] 3. Another error assigned is the refusal to give the instruction marked "B," in the form in which it was tendered by the defendant, and the giving in lieu thereof the instruction last referred to. Instruction "B" which was refused reads thus: "The court instructs the jury that if they believe from the evidence that after the car of bending oak had been delivered at Newport News or Portsmouth, and had been inspected, the Paxton Lumber Company instructed the Rosenbaum Hardware Company to dispose of the lumber for the account and to the best advantage of the plaintiff, the defendants are not deemed as a matter of law to have accepted the car of lumber under their contract, the jury shall find for the defendants and shall allow them all costs and charges expended or incurred by reason of the handling of the car."

The defendants were entitled to have the jury instructed that they were not deemed to have accepted the car of lumber under the circumstances recited in the instruction. but the court rightly refused to give it because it instructed the jury to find for the defendant, ignoring all of the other controverted facts in the case.

[7, 8] 4. Another error assigned is in giving instruction No. 3 at the instance of the plaintiff, which reads thus: "The court instructs the jury if they believe from the evidence that the defendant delivered the car of lumber in question to its customer without inspecting it, this constitutes an acceptance, and they shall find for the plaintiff, unless the jury believe from the evidence that plaintiff. after controversy arose between it and defendant, and with full knowledge of the facts, instructed the defendant to hold and dispose of the lumber on its account and for its benefit."

This instruction assumes that there is evidence tending

to prove that the defendant delivered the car of lumber to its vendee, and tells the jury that this constitutes an acceptance. This we think is clearly error. The car was transported directly from the plaintiff at Bristol and tendered to the defendant's customer at the government Navy Yard for examination, but was never delivered to such vendee, because he refused to accept it, and the instruction entirely ignores the contract which the plaintiff was under obligation to perform. The case seems to have been tried with little reference to this contract, and the vital question in the case as to which the jury should have been instructed appears to have been ignored. That vital question is whether or not the lumber shipped was of the character and quality which the plaintiff was under obligation to ship. If it was, the defendant is indebted for the full purchase price claimed. The jury should have been told that if, with knowledge of the facts, the plaintiff had waived its right to insist upon the defendant's acceptance of the lumber, then it could not recover the purchase price unless this waiver had been made in ignorance of all of the pertinent facts, and that if it had retracted its waiver for good cause, it might recover upon proof that the lumber was in fact substantially of the character and quality which it was under contract to deliver. Clearly, however, the burden in this aspect of the case was upon the plaintiff to show to the satisfaction of the jury that the lumber was of such quality, and the mere failure of the defendant to have it inspected could in no event relieve it of this burden.

We are of opinion to reverse the case and to remand it for a new trial, for the errors indicated.

*Reversed.*