# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## Bardach Iron and Steel Company, Inc., v.
## S. Tenenbaum.

### June 14, 1923.

1. Notice of Motion for Judgment—*Sufficiency—Assignment of Error—Necessity—Case at Bar.*—In the instant case, an action by seller of goods against buyer, the notice of motion for judgment was largely aided by a "statement of said damages (is) attached hereto as a part hereof," but it was doubtful whether the two together stated a case. The contracts of sale were not filed with, or made a part of the notice, nor their substance alleged. The whole obligation upon the defendant, if any, was purely inferential.

   *Held:* That the notice was plainly insufficient. But as the ruling of the trial court on the demurrer to the notice was not assigned as error, it could not be considered by the appellate court.

2. Notice of Motion for Judgment—*Requisites—Section 6046 of the Code of 1919.*—Section 6046 of the Code of 1919, authorizing a proceeding by notice of motion for judgment, was intended to dispense with matters of mere form, but not of substance. The defendant is under no obligation to go outside of the pleadings to ascertain what demands the plaintiff is asserting against him.

3. Notice of Motion for Judgment—*Requisites—Section 6046 of the Code of 1919.*—Where plaintiff elects to proceed by motion he is not relieved from the necessity of stating such facts as will entitle him to recover of the defendant, if the facts alleged be proved. The plaintiff must always state a good cause of action against the defendant, regardless of the form of procedure. What is lacking in allegation cannot be supplied by evidence.

4. Dismissal, Discontinuance and Nonsuit—*"Dismissed Agreed"—Reinstatement of Action—Case at Bar.*—In the instant case the court entered the following order: "On motion of the plaintiff and with the consent of the defendant, this cause is dismissed agreed." On the next day an order was entered to the effect that as it appeared to the court from the statements of counsel that the first order was based on a misunderstanding on the part of counsel for the plaintiff as to the meaning and effect thereof, said order should be annulled and the case reinstated.

*Held:*   That as the "statements of counsel" were not embodied in the bill of exception, the Supreme Court of Appeals was without evidence to show that there was error in the trial court in entering the order reinstating the cause.

5. RECORDS—*Alteration and Change—"Dismissed Agreed."*—Ordinarily, the records of a court of record remain in the breast of the court, and subject to change or alteration by the court during the term at which they are made, but an order "dismissed agreed" is an exception to the general rule. The court has no power to make such a record except by consent of the parties, and, having obtained such consent and made the entry, it is equally without power to set it aside without the consent of both parties, except upon some ground that would warrant the setting aside of other contracts of like nature.

6. DISMISSAL, DISCONTINUANCE AND NONSUIT—*Effect of Order "Dismissed Agreed"—Retraxit.*—An order "dismissed agreed" not only puts an end to the pending suit, but is a bar to any subsequent suit on the same cause of action, between the same parties, as fully as a retraxit would be. It is a declaration of record, sanctioned by the judgment of the court, that the cause of action has been adjusted by the parties themselves in their own way.

7. DISMISSAL, DISCONTINUANCE AND NONSUIT—*Effect of Order "Dismissed Agreed"—Unqualified Agreement.*—But in order that a dismissal of a suit agreed should have the effect of a retraxit and bar a subsequent suit for the same cause of action, there must have first been an unqualified agreement that the suit should be "dismissed agreed," and in the instant case it was the contention of counsel that he had only intended to agree to dismiss the action with a view of bringing another action, and that the phrase "dismissed agreed" did not express his intention.

8. PARTIES—*Assignor and Assignee—Substitution of Assignee for Assignor—Foreign Corporations—Case at Bar.*—In the instant case, an action by seller, a foreign corporation, against buyer, the trial court substituted the assignee of plaintiff for plaintiff, it appearing to the court that since the institution of the action the assignee had acquired all the right, title and interest of the plaintiff in all the assets of the plaintiff.

*Held:* Error.

9. PARTIES—*Assignor and Assignee—Substitution of Assignee for Assignor—Foreign Corporations—Case at Bar.*—In the instant case, an action by seller, a foreign corporation, against buyer, the plaintiff might have endorsed the name of his assignee on the writ or declaration as the beneficial plaintiff, or might have amended its notice of motion by inserting therein, after its own name, the name of the assignee as beneficiary, but this would have been unavailing if, as contended by the defendant, the plaintiff had ceased to be a corporation, and could

not under the law of its incorporation maintain the action.   If the assignor could not maintain the action, it was necessary for the assignee to sue in his own name, but this involved the necessity for a new suit.   Section 3815 of the Code of 1919 applies only to domestic corporations.

10.   PARTIES—*Nonjoinder and Misjoinder—Substitution of Parties—Section 6102 of the Code of 1919—Case at Bar.*—Section 6102 of the Code of 1919 relates to nonjoinder and misjoinder, and not to substitution of one sole plaintiff for another sole plaintiff.   Nonjoinder means that a party has been omitted who ought to be *joined* with an existing party, not *substituted* for an existing party.   That section further provides that "such new party shall not be added unless it shall be made to appear that he is a resident of the State, and the place of such residence be stated with convenient certainty," and here the substituted party was not a resident of this State.

11.   PARTIES—*Assignor and Assignee—Substitution of Assignee for Assignor—Case at Bar.*—In the instant case the trial court substituted plaintiff's assignee for plaintiff.   Plaintiff's assignee testified that he held a written assignment of all the assets of the plaintiff corporation.   Proof, not only of the assignment, but of its legal execution, was necessary for the protection of defendant.   Defendant had the right to make this issue and have it tried, but could not do so upon the pleadings as they stood, as no assignment was alleged.

*Held:*   That it was error on the part of the trial court to permit the substitution of the assignee of plaintiff as plaintiff.

12.   SALES—*Action by Seller Against Buyer—Evidence—Admissions.*—In the instant case, an action by seller against buyer, after the controversy had arisen, the original plaintiff placed its claim in the hands of attorneys for collection.   Thereupon a correspondence ensued between the attorneys and the defendant.   The letters of the defendant at least tended to show certain admissions by the defendant.   Dedendant was permitted to offer testimony to show that the supposed admissions had no reference to the contracts involved in the present litigation.

*Held:*   That the trial court committed no error in admitting the correspondence in evidence.   It was admissible for the purpose of showing or tending to show admissions by the defendant against its interests, and the fact that a controversy had already arisen over the contracts was wholly immaterial.

13.   CONTRACTS—*Printed Forms—Whether Printed Clause Below Signature Formed Part of Contract.*—In the instant case, an action by seller against buyer, the contracts of sale were upon printed forms prepared by defendant.   At the foot of each contract was a printed clause as follows:   "This contract subject to all contingencies beyond our control, and cannot be broken except by mutual consent, which must be made in writing."   The copies in the record were signed by the

defendant above that paragraph. The parties contracted with reference to a shipment by water, and knew that such shipments were subject to the contingency of the ability to secure cargo space, and that this was not always within the control of the shipper.

*Held:* That the quoted paragraph was a part of the contract of the parties.

14. SALES—*Action by Seller Against Buyer—Failure to Secure Cargo Space for Shipment—Evidence—Case at Bar.*—In the instant case, an action by seller against buyer, the contract was subject "to all contingencies beyond our control." The *bona fide* efforts, therefore, of defendant to secure cargo space, and its failure to do so, without fault on its part, and the fact that during the life of the contracts there was an embargo for a considerable length of time, were legitimate subjects of inquiry, and the trial court erred in excluding testimony offered by defendant in relation thereto; and the fact that defendant had resold to another exporter by contract in all respects similar to the contracts with plaintiff, did not and could not affect the result.

15. SALES—*Action by Seller Against Buyer—Failure to Secure Cargo Space for Shipment—Evidence.*—In the instant case, an action by seller against buyer, plaintiff claimed that there was no ship in harbor on a certain day to receive cargo. The president of the defendant company testified that there was, and gave the name of the ship. He admitted that he was not in the port at the time designated, but testified that he had paid drafts that had been drawn on him with ocean bills of lading attached and marine certificates of insurance for part of the cargo of that ship, which had been sent abroad to foreign consignees and hence could not then be produced by him. The trial court excluded this testimony, saying, "I do not think that is testimony, but I think you should prove it by somebody who was there."

*Held:* Error.

16. EVIDENCE—*Admissibility—Weight.*—The admissibility of evidence is not measured by its weight, but is determined by other principles.

17. EXCEPTIONS, BILL OF—*Effect of Bill of Exceptions—Notations of Exceptions.*—The bill of exception fixes definitely the ruling of the trial court. Mere notations of exceptions in the stenographer's report of the evidence will not be noticed by the appellate court.

18. NEW TRIALS—*Plaintiff Limited to Damages Found on First Trial.*—In the instant case, in remanding the case to the trial court, the Supreme Court of Appeals provided that in the event of a new trial of the case on amended pleadings, the plaintiff should be limited in the amount of his recovery to the amount of damages assessed by the jury on the first trial.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in a proceeding by motion

for a judgment for damages.    Judgment for plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*Rumble & Rumble*, for the plaintiff in error.

*Swink & Fentress*, for the defendant in error.

Burks, J., delivered the opinion of the court.

This is a proceeding by motion to recover damages,
presumably for the failure of the defendant to accept
and pay for goods purchased of the plaintiff.    We say
*presumably*, because the notice does not so state, though
the evidence tends to sustain a claim of that nature.
The action was commenced in the name of the Chatham
Iron and Metal Company, Inc., but pending the proceed-
ing, S. Tenenbaum, the defendant in error, was substi-
tuted as plaintiff.    The notice was as follows:

"To  Bardach Iron and Steel Company, Inc., a corpo-
ration:

"Take notice that the undersigned, Chatham Iron
and Metal Company, Inc., a corporation duly chartered
and existing, will on Thursday, the 29th day of June,
1921, between the hours of 10 A. M. and 2 P. M. of that
day, or as soon thereafter as it can be heard, move the
Court of Law and Chancery for the city of Norfolk, Vir-
ginia, in the court room of said court, for a judgment in
its favor and against you, for the sum of $1,750.08, with
interest thereon from the 8th day of November, 1920,
until paid, together with costs herein expended.

"Said account is due to the undersigned, for damages
on account of your breach of contracts with the under-

signed dated June 29, 1920, and July 8, 1920.   A statement of said damages is attached hereto as a part hereof.

"Given under our hand, this the 13th day of June, 1921.

"Chatham Iron and Metal Company, Inc.,
"By G. R. Swink, its attorney."

Attached to the notice was what is called an account, composed of eighteen items, all of similar nature, a sample of which is: "July 26—P. McK. & Y. No. 40715–108,200 lbs.," and at the foot, "Iron already delivered 1,099,000 lbs., or 490.62 tons."   Beneath this summary is the following memorandum:

| "Contract for | 600.00 tons |
| Delivered | 490.62 tons |
| | 109.38 tons to be delivered |
| Contract price | $23.00 per ton |
| Market price at time and place of delivery | 7.00 per ton |
| Difference between contract and market price | $16.00 per ton |

Damage for failure to accept 109.38 tons at $16.00 per ton, $1,750.08."

The account is headed, "Chatham Iron and Metal Company, Inc.

"Savannah, Ga., June 8, 1921.

"Iron Shipped to Bardach Iron and Steel Company."

[1] There was a demurrer to the notice which was overruled.   The notice, taken by itself, is too plainly insufficient to justify the taking of time and space to

state the reason therefor. It is largely aided by the "statement of said damages (is) attached hereto as a part hereof," but it is very doubtful if the two together state a case. The contracts are not filed with, or made a part of the notice, nor their substance alleged, nor is it in any way shown that the defendant was under any obligation to accept and pay for the 109.38 tons of iron. The whole obligation upon the defendant, if any, is purely inferential. But the ruling of the trial court on the demurrer is not assigned as error in the petition for writ of error, and hence cannot be considered by this court. *Deitz* v. *Whyte*, 131 Va. 19, 109 S. E. 212.

[2] We must again call attention to the requisites of a sufficient notice under section 6046 of the Code. That section was intended to dispense with matters of mere form, but not of substance. The defendant is under no obligation to go outside of the pleadings to ascertain what demands the plaintiff is asserting against him.

[3] In *Matthews* v. *LaPrade*, 130 Va. 408, 413-14, 107 S. E. 795, 797, it is said: "It is a mistake to suppose that because a plaintiff elects to proceed by motion he is relieved from the necessity of stating such facts as will entitle him to recover of the defendant, if the facts alleged be proved. The plaintiff must always state a good cause of action against the defendant, regardless of the form of procedure adopted. The facts alleged must be sufficient in substance to warrant a recovery. If they are sufficient in substance, but deficient in detail, the defendant should call for a bill of particulars. We recently said on this subject:

" 'In a proceeding of this kind the notice takes the place of the writ and the declaration, and while the notice is viewed with great indulgence, it must set out matter sufficient to maintain the action, and whether or not it does so is tested by a demurrer to the notice. What

is lacking in allegation cannot be supplied by evidence. There must be both allegation and proof to entitle a plaintiff to a judgment, and the allegation must precede the proof.   *   *   *   If this were the only error committed on the trial, we would hardly reverse the judgment of the trial court, but we do not recede from the proposition that, no matter what form of procedure is adopted, every litigant has the right to be informed in plain and unmistakable language of the ground of complaint or defense of his adversary.   The procedure by notice under section 6046 of the Code is looked upon with great indulgence, not because the notice is supposed to be the act of a layman ignorant of forms of procedure, for that would be contrary to almost universal experience, but because the courts are loath to sacrifice substance to form, and desire, so far as possible, to avoid that result.   The adoption of this method of procedure, however, cannot dispense with the allegation of the substance of a good' ground of action or defense. Anything less than this would endanger the substantial rights of litigants.'   *Mankin* v. *Aldridge*, 127 Va. 761, 105 S. E. 459."   See also *Security Loan & Trust Co.* v. *Fields*, 110 Va. 827, 67 S. E. 342.

[4]  The pleadings in the cause were made up at the June and November terms, 1921, of the court.   On December 8, 1921, the following order was entered: "On motion of the plaintiff and with the consent of the defendant, this cause is dismissed agreed."   On the next day, to-wit, December 9, 1921, the following order was entered:      .

"It appearing to the court from the statements of counsel that an order entered in above entitled cause on December 8, 1921, was based on a misunderstanding on the part of counsel for the plaintiff as to the meaning and effect thereof, it is ordered that said order be and

the same is hereby set aside and annulled, and said action is reinstated on the docket of this court and continued, to which order of the court the defendant excepts."

This action was resisted by the defendant, and the action of the trial court was duly excepted to, and is assigned as error here.

[5, 7] Ordinarily, the records of a court of record remain in the breast of the court, and subject to change or alteration by the court during the term at which they are made, but an order "dismissed agreed" is an exception to the general rule. The court has no power to make such a record except by consent of the parties, and, having obtained such consent and made the entry, it is equally without power to set it aside without the consent of both parties, except upon some ground that would warrant the setting aside of other contracts of like nature. It is a contract of record that the court is without power to disturb except as stated. The court may correct its own errors, but cannot change the contracts of parties without their consent. *Deaver* v. *Jones,* 114 N. C. 649, 19 S. E. 637; *Hammond* v. *Place,* (Mich.) Harr. 438. If the trial court was without power to set aside the order "dismissed agreed" made on December 8, 1921, that was an end of the case. Such an order not only puts an end to the pending suit, but is a bar to any subsequent suit on the same cause of action, between the same parties, as fully as a retraxit would be. "It is a declaration of record, sanctioned by the judgment of the court, that the cause of action has been adjusted by the parties themselves in their own way." *Hoover* v. *Mitchell,* 25 Gratt. (66 Va.) 387, 388; *Wohlford* v. *Compton,* 79 Va. 333; *Siron* v. *Ruleman,* 32 Gratt. (73 Va.) 215, 223; *Jarboe* v. *Smith,* 10 B. Mon. (Ky.) 257, 52 Am. Dec. 541; *U. S.* v. *Parker,* 120 U. S. 89,

7 Sup. Ct. 454, 30 L. Ed. 601; *Simmons* v. *Yoho* (W.Va.) 115 S. E. 851,. 857; 1 Freeman on Judgments, section 262; 2 Black on Judgments, section 706.

In *Jarboe* v. *Smith*, 10 B. Mon. (Ky.) 257, 52 Am. Dec. 541, it is said to be a bar between the parties on the original cause of action, unless there is an express stipulation that another suit may be brought. In the judgment entered in *Hoover* v. *Mitchell, supra*, it is said that the dismissal of a suit agreed, without any explanation or qualification showing a contrary intention, is at least a *prima facie* determination of the matter controverted in that suit, but the opinion in the case holds that "dismissed agreed" is equivalent to a retraxit. But to have this effect, there must have first been an unqualified agreement that the suit should be "dismissed agreed." In the case at bar, we understand the position of counsel for the plaintiff below to be that he did agree to dismiss the present action with a view of bringing another action for the same cause, and that the phraseology of the order of December 8, 1921, did not express that agreement, but cut him off from the very object he had in dismissing his action. The trial court must have so understood the "statements of counsel," else it would have been without power to enter the order of December 9, 1921. But the "statements of counsel" are not embodied in the bill of exception of the plaintiff in error, and we are without evidence to show that there was error in the judgment of the trial court in entering the order of December 9, 1921, and hence said order cannot be set aside. *Colbert* v. *Callaham*, 132 Va. 475, 112 S. E. 756.

[8] The error next assigned is that the trial court, by an order made in January, 1922, substituted S. Tenenbaum as plaintiff in the place and stead of the Chatham Iron and Metal Company, Incorporated; it appearing

to the court that since the institution of the action he has acquired all the right, title and interest of the plaintiff in all the assets of the plaintiff. This was done over the objection of the defendant.

[9] The common law exists in this State, except so far as changed by statute. There is no precedent for such a procedure at common law, and we have no statute authorizing it. It is true that pending the action the plaintiff might have endorsed the name of Tenenbaum on the writ or declaration as the beneficial plaintiff, or might have amended its notice by inserting therein, after its own, the name of Tenenbaum as beneficiary (*Kain* v. *Angle,* 111 Va. 415, 69 S. E. 355); but this would have been unavailing if, as contended by the defendant, the plaintiff had ceased to be a corporation, and could not under the law of the State of its incorporation maintain such an action. If the assignor could not maintain the action, it was necessary for the assignee to sue in his own name, but this involved the necessity for a new suit. Section 3815 of the Code applies only to domestic corporations.

[10] Section 6102 of the Code, relates to non-joinder and misjoinder, and not to substitution of one sole plaintiff for another sole plaintiff. Non-joinder means that a party has been omitted who ought to be *joined* with an existing party, not *substituted* for an existing party. That section further provides that "such new party shall not be added unless it shall be made to appear that he is a resident of the State, and the place of such residence be stated with convenient certainty." Here the substituted party is not a resident of this State.

[11] In the case at bar, Tenenbaum testified that he was the owner, by written assignment, of all the assets of the plaintiff corporation, but produced no such

assignment; nor do the pleadings allege any such. The assignment, if any, was by a corporation, and it was important to the defendant to know that the assignment was duly and legally executed by the corporation. This did not appear from his testimony. Any other person who would swear that he was the assignee of the assets of the corporation might have brought the suit as well as Tenenbaum. Proof, not only of the assignment, but of its legal execution, was necessary for the protection of the defendant. It had the right to make that issue and have it tried, but could not do so upon the pleadings as they stood, as no assignment was alleged, and it was error upon the part of the trial court to permit the substitution of Tenenbaum as a plaintiff. *Tillman* v. *Banks*, 116 Ga. 250, 42 S. E. 517.

[12] After the present controversy had arisen, the original plaintiff placed its claim in the hands of attorneys for collection. Thereupon a correspondence ensued between the attorneys and the defendant. Upon the trial of the case, this correspondence was admitted in evidence over the objection of the defendant. The letters of the defendant at least tended to show certain admissions by the defendant. The defendant was permitted to offer testimony to show that the supposed admissions had no reference to the contracts involved in the litigation, but to a conversation between representatives of the plaintiff and defendant companies. The trial court committed no error in admitting the correspondence in evidence. It was admissible for the purpose of showing or tending to show admissions by the defendant against its interests, and the fact that a controversy had already arisen over the contracts was wholly immaterial.

[13, 14] The basis of the present action is the breach of two contracts which were practically identical in

form, except as to dates and time of performance. One of them was dated June 29, 1920, and called for deliveries within three months. The other was dated July 8, 1920, and called for deliveries within four months. Each called for 300 tons of designated steel to be delivered F. A. S. (free alongside of ship) at Savannah, Ga., by the Chatham Iron and Metal Company, Inc., upon shipping directions to be given by the defendant, Bardach Iron and Steel Company. The contracts were upon printed forms prepared by the defendant, with blanks left to fill in the particulars of each contract. At the foot of each contract is the following paragraph: "This contract subject to all contingencies beyond our control, and cannot be broken except by mutual consent, which must be made in writing." The copies in the record are signed by the defendant above that paragraph. The copies signed by the plaintiff's assignor are not in the record. It is insisted by the plaintiff that the paragraph quoted is not a part of the contract, and great reliance is placed on *Rosenbaum Hardware Co.* v. *Paxton Lumber Co.*, 124 Va. 346, 97 S. E. 784. The facts of that case are so entirely different from those in the case at bar as to destroy all resemblance of the two cases. That case related to a printed paragraph at the top of a letterhead not referred to in the body of the letter below, containing an absolute contract between the parties. Here the paragraph referred to is not in an obscure place and is expressly made a term of the contract. "*This contract*" is subject to, etc. The parties knew, and contracted with reference to a shipment by water. They knew that shipments of this character were subject to the contingency of the ability to secure cargo space for that character of shipments, and that this was not always within the control of the shipper. The defendant was an exporter of iron and steel, and the

printed form used was adapted to shipments of that character.   If the quoted paragraph was not intended to be a part of the contract, it should, and probably would, have been stricken out.   We are of opinion that the paragraph quoted is a part of the contract of the parties.   The *bona fide* efforts, therefore, of the defendant to secure cargo space, and its failure to do so, without fault on its part, and the fact that during the life of the contracts there was an embargo for a considerable length of time on freight of that character, were legitimate subjects of enquiry, and the trial court erred in excluding testimony offered by the defendant in relation thereto.   The fact that the defendant had resold to another exporter by contract in all respects similar to the contracts with the plaintiff, did not and could not affect the result.   In either case, cargo space for the foreign shipment had to be obtained.

[15, 16]  The plaintiff, Tenenbaum, claimed that there was no ship in Savannah about September 15, 1920, to receive cargo.   The president of the defendant company testified that there was, and gave the name of the ship.   He admitted that he was not in Savannah at the time designated, but testified that he paid drafts that had been drawn on him with ocean bills of lading attached and marine certificates of insurance for part of the cargo of that ship, which had been sent abroad to foreign consignees and hence could not then be produced by him.   The trial court excluded his testimony on that point, saying, "I do not think that is testimony, but I think you should prove it by somebody who was there."   This was error.   While the evidence offered was not conclusive of the fact that the ship was at Savannah at the time mentioned, it was very persuasive and should have gone to the jury.   It was admissible in evidence, but its weight was to be determined by the

jury in connection with other evidence in the case. The witness had very substantial reasons for stating that the ship was there, and he should have been allowed to state them. Evidence of the fact that the ship was there was not limited to the testimony of "somebody who was there." The admissibility of evidence is not measured by its weight, but is determined by other principles.

The bill of exception on this point certifies that "the witness stated the said bills of lading, drafts and insurance certificate had been sent abroad to foreign consignees, and were no longer in his possession. Yet the court ruled that the witness, notwithstanding he had received said documents, was not competent to testify as to whether there was or was not a ship to receive cargo at Savannah, Georgia, on or about September 15, 1920, and excluded the foregoing answers from the evidence in this case, to which the defendant, by counsel, excepted."

[17] The further examination of this witness, as appears from the certificate of evidence and notations thereon, might cast some doubt upon what was excluded by the court, but the judgment was entered February 9, 1922, and the above bill of exception was signed February 14, 1922. The bill of exception fixes definitely the ruling of the trial court. We have several times held that mere notations of exceptions in the stenographer's report of the evidence will not be noticed by this court. *Robertson's Ex'r* v. *Atlantic C. R. Co.*, 129 Va. 494, 106 S. E. 521; *Myers* v. *Com'th*, 132 Va. 746, 111 S. E. 463.

The errors we have pointed out led to corresponding errors in the instructions which need not be discussed in detail. We have sufficiently stated our views for the guidance of the trial court if another trial is had. It

was the duty of the defendant to secure the necessary cargo space, if it could be secured by proper efforts on his part, within the time fixed by the contracts, and, when obtained, to give shipping instructions to its vendor for such reasonable time in advance as would enable it, in the usual course of business of that character, to deliver the steel to the ships provided therefor, and of the vendor to deliver the steel alongside of said ships within the time usually allowed for such delivery after such notice, unless either party was excused by the direction or conduct of the other, or was prevented from performing its duty by contingencies beyond its control.

[18] For the reasons stated, the judgment of the trial court will be reversed, the verdict of the jury set aside and the case remanded to the trial court with directions to permit the defendant in error, if he shall so desire, to amend his notice so as to set out a right of action in himself, or in another for his benefit, upon a cause of action against the defendant; and if he shall fail to do so, to dismiss the present action, without prejudice to the rights, if any, of the parties to the present action. But in the event of such amendment and a new trial of the case on amended pleadings, the plaintiff shall be limited in the amount of his recovery, if any, to $545.00, with interest thereon from November 8, 1920; being the amount of damages assessed by the jury on the former trial. The plaintiff in error is entitled to a judgment for its costs.

*Reversed.*

SIMS, J., dissenting:

I find myself unable to concur in the holdings of the majority opinion in the following particulars:

1. I do not think that the paragraph appearing on the printed form used by the defendant, below its signature

to the contract, is a part of the contract.   It seems to me that the principle involved in *Rosenbaum Hardware Co.* v. *Paxton Lumber Co.*, 124 Va. 346, 97 S. E. 784, is applicable, and that the holding there is controlling here to the effect that such paragraph is not a part of the contract.   And,

2.  It seems to me that, even if the paragraph in question be held to be a part of the contract, its meaning is that it had reference only to contingencies not within "our"—*i. e., the defendant's*—control, and stated that the happening of contingencies beyond defendant's control would *not affect* the contract; and that it must be lived up to in accordance with its terms, unless abrogated by mutual consent of both parties thereto in writing.   As is seen from a reading of it, the language of the paragraph is peculiar and if it was intended to convey some other meaning it is not so phrased as to do so. That, certainly, the paragraph had no reference to delivery at Savannah being dependent upon the contingency of the ability or inability of the defendant to obtain cargo space in shipping vessels at Savannah, because delivery was to be made in accordance with "shipping instructions to follow," as expressly provided in the contract; which shipping instructions, the evidence shows, without conflict, were given the plaintiff unconditioned upon any such cargo space being obtained; and, upon the evidence showing what the plaintiff's action was, when considered as affected by such shipping instructions, the plaintiff was plainly entitled to recover.

3.  For the reasons stated, I think there was no error committed by the trial court in excluding the testimony of the president of the defendant on the subject of there being a ship at Savannah about September 15, 1920, that being immaterial in view of the terms of the contract.   And

4. The trial was in fact had in all respects just as if the original plaintiff had remained such and Tenenbaum was in fact treated throughout the trial as being merely the beneficial plaintiff. Hence, it seems to me, we should regard the substance of what was done, rather than the mere form, in the substituting of Tenenbaum as plaintiff, and hold that what was done in that particular was no more, in substance, than what would have been done if the original plaintiff had indorsed the name of Tenenbaum on the writ of declaration as the beneficial plaintiff; to which, as stated in the majority opinion, there was no valid objection under the practice permitted in this jurisdiction.

On the whole, I think the case should be affirmed.