## CIRCUIT COURT OF FAIRFAX COUNTY

W. Forbes Ramsey et al.

v.

The Regency at McLean
Unit Owners' Association

February 5, 1993

Case No. (Law) 111028

BY JUDGE MICHAEL P. MCWEENY

A bench trial in this matter was held on December 9, 1992. At the close of Defendant's case, the Court requested that counsel for the parties submit closing arguments in writing to the Court. Upon careful consideration of the evidence established at trial and the written briefs submitted on closing argument, the Court makes the following rulings.

### Findings of Facts

Generally, the Court agrees with and adopts the findings of facts proposed in Plaintiffs' closing argument. (Plaintiffs' Closing Memorandum, pp. 2–16). There are three documents relevant to this proceeding: the Third Amendment to Declaration and two separate agreements between the parties.

The Regency at McLean, a Condominium (hereinafter "Condominium") was formed by Declaration on April 4, 1977. The Declaration (and later the Third Amendment to Declaration) provides that the Condominium's club unit has a 9.287% undivided interest in the com-

mon elements of the Condominium and is entitled to cast 9.287 votes (hereinafter "votes/interest share") in the Unit Owners' Association, the managing body of the Condominium. On August 26, 1977, a Third Amendment to Declaration was formed which provided that the Condominium's club unit by agreement would pay 22.677% of the common expenses incurred by the Association for electric power. Thereafter in December of 1978, the Plaintiffs purchased the Condominium's club unit subject to the terms of the Declaration, by-laws, and Third Amendment to Declaration.

Nearly a decade later the Plaintiffs (hereinafter "Club Unit") and the Defendant (hereinafter "Unit Owners' Association") entered into a written agreement dated June 8, 1988, which provided that the Club Unit would pay 33.334% of the pool costs associated with the Condominium's swimming pools.

Over the years differences had arisen between the parties concerning the computational method used to determine the share of electrical costs borne by the Club Unit. A procedure for resolving these disputes was agreed upon and embodied in a written agreement dated March 30, 1990.

### The June 8, 1988, Memorandum of Agreement (Count IV)

There is no question that the Condominium Act of Virginia, codified at § 55–79.39 *et seq.* of the Code of Virginia, as amended, is applicable to this proceeding.[1] Section 55–79.41:1 of the Condominium Act states that the provisions of the statute may not be varied by agreement except to the extent that the statute expressly permits it. This provision has been in effect since 1982.

The 1988 Agreement involves the allocation of pool costs, which are categorized as common expenses, and thus the Agreement is subject to § 55–79.83 of the Condominium Act which governs liability for common expenses. By express language, § 55–79.83(A), (B), and (C) permit certain common expenses to be allocated by provisions in condominium instruments; but otherwise, under subsection (D), the common expenses must be assessed in direct proportion to votes/interest shares.

Since the 1988 Agreement purports to assess the Club Unit with more than its votes/interest share of the pool costs, the Agreement can

---

[1] All cites refer to the 1992 amendments to the Condominium Act.

be upheld under § 55–79.83 only if it is a condominium instrument. Section 55–79.41 defines "condominium instruments" as properly recorded "declaration[s], bylaws, and plats and plans." The 1988 Agreement clearly does not come within this definition. As such, the 1988 Agreement is in violation of 55–79.41:1 and is void from its inception.

Where a contract is determined to be void, equity requires the parties to be restored to the same positions they occupied at the time of contracting. To prevent unjust enrichment in this matter, the Club Unit is entitled to restitution of all pool expenses paid in excess of its § 55–79.83(D) votes/interest share. The Club Unit is awarded damages as proven in the amount of $31,064.00. Prejudgment interest is denied.

### *The Third Amendment to Declaration ("Third Amendment") (Count III)*

The Third Amendment allocates electrical costs which, like the pool costs, are categorized as common expenses. Thus, it is subject to § 55–79.83. Being by definition a condominium instrument, the Third Amendment qualifies under the express exception to § 55–79.83 and is not in violation of § 55–79.41:1.

The principle inquiry, then, becomes whether or not the electrical costs come within § 55–79.83(B).[2] If they do not, then § 55–79.83(D) applies, and the allocation under the Third Amendment is invalid because it requires the Club Unit to pay more than its votes/interest share.

In reference to the type of expenses assessable by condominium instruments, subsection (B) reads: "any other *common expenses* benefitting less than all of the condominium units, or caused by the conduct of less than all those entitled to occupy the same" (emphasis added). Elsewhere in the statute, "common expenses" are defined as "all expenditures lawfully *made or incurred* by or on behalf of the unit owners' association" (emphasis added). Code of Virginia § 55–79.41.

The Condominium Statute is remedial in nature and should be liberally construed. *Harbour Gate Owners' Ass'n v. Berg*, 232 Va. 98, 103, 348 S.E.2d 252 (1986). Subsection (B) does not refer to "any expenses" but rather to "any common expenses." The insertion of a

---

[2] The Court has determined that the electrical expenses involved in this litigation do not come within the purview of subsections (A) and (C) of § 55–79.83, and therefore, those subsections will not be discussed herein.

specific statutory term indicates the legislature intended that expenses "incurred by the unit owners' association" could be assessed in a proportion different from the statutory votes/interest share, especially, it would seem, where the expenses are known to be incurred disproportionately by the unit owners.

In this matter, electricity is certainly a utility cost which is lawfully being incurred on behalf of the Unit Owners' Association. Every unit owner consumes some electricity. It is also clear that the Club Unit's operations disproportionately cause an increase in the amount of electricity generated to the whole Condominium. In other words, some percentage of the electricity is caused by and benefits only the Club Unit and would not be incurred by the Unit Owners' Association but for the business of the Club Unit. This appears to be the model § 55–79.83(B) situation. The Court finds that the electrical costs do come within subsection (B).

Under § 55–79.83(B), the Third Amendment may assess the electrical costs against the Club Unit as long as the provisions are reasonable. The evidence shows that the allocation made in the Third Amendment was negotiated at arm's length based on the results of an engineering study conducted for the purpose of estimating the percentage of electricity consumed by the Club Unit. (Trial Testimony of Courtland Traver). The Court concludes that the evidence is sufficient to find that the 22.667% allocation is a reasonable provision. Accordingly, the Third Amendment to the Declaration is valid.

### The March 30, 1990, Agreement (Count II)

The issue presented in respect to the 1990 Agreement is one of interpretation of contract language. In pertinent part, the contract states that "the parties wish to resolve all those issues that remain outstanding between them" (Pl.s' Ex. 23, Agreement, p. 1) and that "the determination of the third auditor shall be binding." (Pl.s' Ex. 23, Agreement, p. 3). The Unit Owners' Association maintains that the Agreement was intended to resolve the disputes on a bill-by-bill basis while the Club Unit maintains that the intent was to apply the final determination prospectively to future bills.

The purpose of the Agreement was to set forth a mechanism for dispute resolution. The Agreement evolved out of an on-going dispute over what computational method should be used to determine the amount owed by the Club Unit for its allocated share of the electrical

costs. The agreement contains detailed procedures for protesting and auditing the bills and unequivocally states that the independent auditor's decision would be binding.

The use of the term "binding" is significant. The dispute here is over the method used to calculate the bills. If a method or formula is to have any worth or any meaning, then it must be applied consistently from bill to bill. In order for the third auditor's determination to be binding on the parties, it must be final; it must establish the method of computation to be used by the parties. Any ambiguity in the parties' application of the term "binding" was clarified by the testimony of Amy Tozzi, President of the Unit Owners' Association, who stated that she did not intend for the audit review procedure to be used more than one time.

Accordingly, the Court finds that the Agreement is prospective in nature. The evidence shows that the parties followed the Agreement procedures for the January-April 1990 bills, and the independent auditor confirmed the computational method used by the Club Unit's auditor, Hoffman & Dykes. Until there is a change in the condominium instruments or a change by agreement of the parties, then, the Hoffman & Dykes method is the method that should be applied in computing future amounts owed by the Club Unit for the electrical costs.

### Breach of the March 30, 1990, Agreement (Count I)

The March 30, 1990, agreement expressly provides that the "losing party" shall pay the fees and costs incurred for the entire audit and resolution procedure. In the event that attorney's fees and costs are incurred in the collection of the auditing fees, the Agreement provides that the "losing party" shall pay them also.

It has been established that the Unit Owners' Association was the "losing party" in the dispute resolution audit procedure. The evidence shows that the Unit Owners' Association did not pay the fees for the Hoffman & Dykes audit as required by the terms of the Agreement. This failure to pay was a breach of the Agreement. Therefore, the Club Unit is awarded damages as proven in the amount of $12,935.30.

### Attorneys' Fees

The Court does not award attorneys fees at this time, but bifurcates that element of damages to another hearing. Counsel for the parties are

requested to set the issue of attorney's fees on a Motions Day for further argument.

### *Summary*

For all of the reasons above, the Court finds the 1988 Agreement allocating pool costs is void; the Third Amendment to Declaration is valid; the 1990 Agreement for dispute resolution is prospective; and the Condominium breached the 1990 Agreement. The Club Unit is entitled to judgment in the total amount of $43,999.30.