348 S.E.2d 252 (1986)
HARBOUR GATE OWNERS' ASSOCIATION, INC., et al.
v.
Max BERG, et al.
Record No. 822155.
Supreme Court of Virginia.
September 5, 1986.
*254 John G. Crandley (Preston, Wilson & Crandley, Virginia Beach, on briefs), for appellants.
Linda Laibstain (John Franklin, III, James A. Gorry, III, Robert C. Nusbaum, Hofheimer, Nusbaum, McPhaula & Brenner, Taylor, Walker and Adams, Norfolk, on brief), for appellees.
Present: All the Justices.
*253 RUSSELL, Justice.
This appeal presents questions concerning the effective dates of the warranty on the common elements of a condominium project required by Code § 55-79.79(b). We must also determine the limitation period affecting an action for the breach of such a warranty.
In August 1973, the developers of the Harbour Gate Condominium in Virginia Beach (the developers) established the project by recording a master deed pursuant to the Horizontal Property Act, Code §§ 55-79.1 through 55-79.38. Construction of the project began in 1973 and reached substantial completion in December 1975. The first condominium unit was conveyed to an individual purchaser on March 22, 1976. Approximately 120 additional conveyances of units were made through the spring of 1978. All the conveyances were by customary general warranty deeds with English covenants of title. They conveyed to each purchaser fee simple title to his unit together with an undivided interest in the common elements of the condominium.
The deeds contained no express warranties concerning structural defects, workmanlike construction, or fitness for habitation. Nevertheless, on July 1, 1974, during the period of construction and before the first unit had been conveyed, the Condominium Act (Code §§ 55-79.39 through 55-79.103) became effective. The Condominium Act expressly superseded the Horizontal Property Act as of July 1, 1974, but continued the Horizontal Property Act in effect with respect to the validity of condominium instruments recorded before that date. Code § 55-79.40. See Chesapeake House on the Bay, Inc. v. Virginia National Bank, 231 Va. 440, 442, 344 S.E.2d 913, 915 (1986).
The Condominium Act included Code § 55-79.79(b) which provides:[1]
Notwithstanding anything in this section to the contrary, the declarant shall warrant or guarantee, against structural defects, each of the units for two years from the date each is conveyed, and all of the common elements for two years. In the case of each unit the declarant shall also warrant that the unit is fit for habitation and constructed in a workmanlike manner so as to pass without objection in the trade. The two years referred to in this subsection shall begin as to each of the common elements whenever the same has been completed or, if later, (1) as to any common element within any additional land or portion thereof, at the time the first unit therein is conveyed, (2) as to any common element within any convertible land or portion thereof, at the time the first unit therein is conveyed, and (3) as to any common element within any other portion of the condominium, at the time the first unit therein is conveyed. For the purposes of this subsection, no unit shall be deemed conveyed unless conveyed to a bona fide purchaser. Any conveyance of a condominium unit transfers to the purchaser all of the declarant's warranties against structural defects imposed by this subsection. For the purposes of this subsection, structural defects shall be those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted *255 standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration, or replacement. Nothing in this subsection shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.
On April 27, 1978, damage was discovered in the roof, a common element, of the condominium. Harbour Gate Owners Association, Inc., the condominium unit owners' association, filed this action for damages against the developers, architects, general contractors, and roofing subcontractors, alleging that the roof contained latent structural defects not discovered until April 1978. The plaintiff claimed that these defects breached the statutory warranties required by the Condominium Act. The original motion for judgment was filed December 3, 1979. On August 8, 1980, an amended motion for judgment was filed, in which four individual unit owners joined the association as additional plaintiffs. On July 29, 1981, a second amended motion for judgment was filed, in which ten unit owners joined with the association as plaintiffs. The defendant developers filed a plea of the statute of limitations. The plaintiffs took a nonsuit as to the architects and contractors, and the case proceeded as a contest between purchasers and developers.
The court held that the right of action for breach of warranty under Code § 55-79.79(b) had accrued when the first unit was sold on March 22, 1976; that the applicable period of limitation was three years, governing contracts not in writing (Code § 8.01-246(4)); and that this action, having been instituted more than three years after the date of conveyance of the first unit, was time-barred. We granted an appeal from the court's order sustaining the plea of the statute of limitations.

A. EFFECT OF THE CONDOMINIUM ACT
Notwithstanding their success in the trial court, the developers argue that there is no indication in the Condominium Act that the legislature intended to give Code § 55-79.79(b) a retrospective application so as to impose its warranties upon parties whose rights and duties were already fixed by condominium instruments recorded under the Horizontal Property Act before the Condominium Act took effect. They assign cross-error to the trial court's implicit holding that Code § 55-79.79(b) affects the Harbour Gate Condominium and contend that the common-law rule of caveat emptor applies except for manufacturers' warranties on equipment and appliances.
The Condominium Act provides, in Code § 55-79.40: "This chapter shall apply to all condominiums and to all horizontal property regimes or condominium projects." That section also makes the former terminology used by the Horizontal Property Act equivalent to corresponding new terminology adopted by the Condominium Act. It further provides that the Condominium Act supersedes the Horizontal Property Act but that the validity of condominium instruments recorded under the Horizontal Property Act would be unaffected. The Horizontal Property Act was not repealed, and remains a part of the Code.
The language of Code § 55-79.40 demonstrates a clear legislative intent to apply the provisions of the Condominium Act to all horizontal property regimes in existence on July 1, 1974. The provisions of the Condominium Act are generally remedial in character, and such legislation may, where the legislative intent to do so is clear, be applied retrospectively, subject to well-defined limitations. Walke v. Dallas, Inc., 209 Va. 32, 161 S.E.2d 722 (1968). Although new legislation will ordinarily not be construed to interfere with existing contracts, rights of action, suits, or vested property rights, Gloucester Realty Corp. v. Guthrie, 182 Va. 869, 874-75, 30 S.E.2d 686, 688 (1944), the developers here make no contention that any contracts for the sales of units were in existence on July 1, 1974, or that any vested property rights were disturbed by the statutory requirement *256 that warranties be given on conveyances made after the effective date of the Condominium Act. We conclude that the warranty provisions of Code § 55-79.79(b) may apply to conveyances of units in horizontal property regimes made after July 1, 1974, and that the trial court did not err in holding the warranties applicable here.

B. THE WARRANTY PERIOD
The purchasers, in an ingenious argument, contend that the warranty statute required the developers to warrant or guarantee the roof for a period of two years from the date of completion of the project or conveyance of the first unit, whichever occurred later, and that in this case March 22, 1976, the date of conveyance of the first unit, was the later date; that the statute contemplated that the warranty would be "read as an express provision of each deed transferred within two years of March 22, 1976"; that each deed recorded between March 22, 1976 and March 22, 1978 thus should be read to include the express statutory warranty; that the two-year period mentioned in the statute regulated only the duration of the warranty period, not the limitation period for filing actions for breach; that the applicable period of limitations was the five-year period governing written contracts under former Code § 8-13; thus, this action was brought well within the limitation period. Even if the limitation period is three years, say the purchasers, any purchaser who received a deed between December 3, 1977 (three years before suit was filed) and March 22, 1978 (the end of the warranty period) would not be barred. This result must follow, the purchasers contend, because the warranty continued from March 22, 1976 to March 22, 1978 and was a part of all deeds issued during that period; that it was breached by defective construction ab initio, which breach continued throughout the warranty period; and that each purchaser whose deed was delivered during the warranty period acquired a right of action for the breach which accrued when the deed was delivered. Thus, the purchasers say, their action was timely filed.
We do not agree with the purchasers' analysis of Code § 55-79.79(b). That section provides that "the declarant shall warrant or guarantee, against structural defects,... all of the common elements for two years.... The two years ... shall begin as to each of the common elements whenever the same has been completed or, if later ... at the time the first unit therein is conveyed." We construe this language to impose a warranty during the two-year period which begins on either the date of completion or the date of conveyance of the first unit, whichever date is later. The warranty expires, however, two years after its commencement, and the dates of delivery of deeds conveying units subsequent to the first have no effect upon it.
Code § 55-79.79(b) extends to each purchaser of a condominium unit a two-year warranty against structural defects in his unit, beginning on the date of delivery of the deed to his individual unit. By contrast, the General Assembly did not provide for staggered warranty periods on the common elements dating from the delivery of individual deeds to the respective units, but chose instead to date that warranty from a single, readily ascertainable time: completion of the structure or conveyance of the first unit, whichever occurs later. Thus, purchasers who took title late in the warranty period had a shorter period of warranty protection on common elements than those who were the earliest purchasers, but this result is not as unjust as the purchasers contend. The individual units are ordinarily unused until sold, and the full warranty period might be necessary after conveyance in order to discover any latent defects within them. The common elements, on the other hand, go into use when the first unit is conveyed, and are subject to scrutiny from that time on.
Applying that analysis to the facts of this case, it is apparent that the warranty period on the roof began on March 22, 1976, the date of the first conveyance, and expired on March 22, 1978. Damage was discovered in the roof in April 1978, after *257 the expiration of the warranty period. The purchasers alleged, however, that the damage was merely a symptom of a latent defect in the original construction of the building, which had been completed by December 1975. Thus, although the breach antedated the warranty, on the facts alleged here, the warranty period did not begin to run until March 22, 1976, when warranty and breach conjoined.

C. THE STATUTE OF LIMITATIONS
We now turn to the question of the applicable statute of limitations. The two-year warranty period provided by Code § 55-79.79(b) is not a limitation governing the assertion of a right of action; rather, it defines the period within which a cause of action for breach of warranty may accrue. Statutes of limitation do not affect a cause of action; they bar a right of action. The two may accrue at the same time, but will not necessarily do so. First Va. BankColonial v. Baker, 225 Va. 72, 81-82, 301 S.E.2d 8, 13-14 (1983). A cause of action is the operative set of facts giving rise to a right of action. It accrues when a wrongful act or breach of duty occurs, even though actual damage may not occur until a later date. A right of action accrues to a person when he sustains damage or injury therefrom. Id.; Locke v. Johns-Manville Corp., 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981).
The two year warranty period, therefore, circumscribes the interval of time within which the warranty exists. If a breach occurs before the two-year warranty expires, a cause of action accrues. If a person suffers damage or injury as a result of the breach, a right of action accrues to him. When will such a right of action be barred? For the answer to that question, we must look to the applicable statutes of limitations governing actions based on contracts, rather than to the two-year warranty period.
In determining which limitation applies, we disagree with the purchasers' contention that the statutory warranty should be "read into" the purchasers' deeds as a written contract "signed by the party to be charged thereby," and is thus governed by the five-year limitation of Code § 8.01-246(2) (former Code § 8-13). A statutory requirement affecting a private contract, if not expressed in the written agreement, nevertheless becomes a part of its terms. A pertinent statute is as much a part of the contract as if it were incorporated in it. Paul v. Paul, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974); Maxey v. American Cas. Co., 180 Va. 285, 290, 23 S.E.2d 221, 223 (1942). Statutory requirements thus imported into private contracts are not, however, writings "signed by the party to be charged" so as to be governed by the five-year statute of limitations. Where a written contract is silent on a matter controlled by statute, the statutory requirement becomes an unwritten term of the contract implied in law. Atlantic Coast Line R. Co. v. Va. Mfg. Co., 119 Va. 5, 8, 89 S.E. 103, 104 (1916). Such unwritten implied contracts are governed by the three-year limitation of Code § 8.01-246(4) (former Code § 8-13).

D. ACCRUAL OF A RIGHT OF ACTION
In Locke, 221 Va. at 959, 275 S.E.2d at 905, we held that in an action for damage for injury to the person, a right of action did not accrue to that person when the wrong was done, but rather when injury or damage occurred as a result of the wrong.[2] In Baker, 225 Va. at 82-83, 301 S.E.2d at 14, we applied a similar analysis to actions for damages to property. There, we held that where a breach of duty preceded damage to property rights, a right of action did not accrue to the property owner until his property suffered damage or injury.
Effective October 1, 1977, the General Assembly adopted Code § 8.01-230, which provides:
In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed *258 limitation period shall begin to run from the date the injury is sustained in the case of injury to the person, when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.
(Emphasis added).
This section is in accord with the holding of Locke with respect to personal injury actions, but materially changes the rule of Baker with respect to property damage actions. In Baker, we noted that the statute might affect future cases, but was inapplicable to the facts in Baker because they had occurred prior to October 1, 1977. 225 Va. at 83, n. 7, 301 S.E.2d at 14, n. 7.
In the case now before us, it is apparent that any unit owner whose deed was delivered before October 1, 1977, was entitled to the benefit of the rule in Baker: his right of action did not accrue until his property rights were injured. He had no property rights until he became an owner, and therefore his right of action accrued when his deed was delivered, if within the warranty period. On the other hand, a purchaser whose deed was delivered on or after October 1, 1977 was affected by Code § 8.01-230. The statute of limitations began to run as to his claim "when the breach of contract or duty occur[red]." That event, as noted above, took place on March 22, 1976.[3]

E. TOLLING THE STATUTE OF LIMITATIONS
The original motion for judgment, filed December 3, 1979, was brought only by the unit owners' association. We held, in Chesapeake House on the Bay, Inc. v. Virginia National Bank, 231 Va. 440, 344 S.E.2d 913 (1986), decided long after the trial court's decision in this case, that such an association had no standing to maintain an action of this kind until July 1, 1981, the effective date of Code § 55-79.80(bl). Thus, the original motion for judgment did nothing to toll the running of the statute of limitations. When the first amended motion for judgment was filed, however, unit owners having standing to sue were joined as plaintiffs. Thus, the running of the statute was tolled on August 8, 1980.[4]
It follows that only a unit-owner plaintiff whose deed was delivered between August 8, 1977 (three years before the statute was tolled) and October 1, 1977 (the effective date of Code § 8.01-230) would have a right of action which was not time-barred. The following recapitulation of relevant dates illustrates the factors which bring us to this conclusion:

*259
July 1, 1974: Effective date of Condominium
 Act creating 2-year warranty
 from time first unit is
 conveyed.
December, 1975: Construction completed,
 containing alleged defects.
March 22, 1976: First unit conveyed, beginning
 warranty period on the roof.
August 8, 1977: Three years before statute
 tolled. Earliest date for right
 of action not time-barred.
October 1, 1977: Effective date of Code §
 8.01-230. Rights of action of
 all subsequent purchasers
 accrue as of March 22, 1976.
March 22, 1978: Warranty period ends.
Spring, 1978: Last units conveyed.
August 8, 1980: Statute of limitations tolled by
 appearance of first plaintiffs
 having standing to sue.
July 1, 1981: Effective date of Code §
 55-79.80(bl), giving standing to
 association to sue as
 attorney-in-fact for unit
 owners.

Because the case was decided below on a plea of the statute of limitations, without evidence, and the pleadings are silent on the question, there is no record before us concerning the dates upon which deeds were delivered to unit-owner plaintiffs. The case must, accordingly, be remanded for the determination of that question.

F. CLASS ACTION
The developers assign cross-error both to the trial court's implied holding that the unit owners' association has standing as a plaintiff, and its implied holding that the individual unit-owner plaintiffs might maintain the suit as a class action for the benefit of all others similarly situated. The developers contend that neither rule nor statute in Virginia authorizes a class action at law for damages. Because these arguments are raised on appeal for the first time, we need not decide them. Rule 5:25. Because the case must be remanded, however, we point out that the unit owners' association acquired, on July 1, 1981, before the second amended motion for judgment was filed, the authority to maintain this suit as attorney-in-fact for all unit owners. Code § 55-79.80(bl) (Acts 1981, c. 146). The association's right to maintain the suit, however, is dependent upon the existence of at least one unit-owner plaintiff (whether joined by the first or the second amended motion for judgment) whose right of action accrued between August 8 and October 1, 1977. In the absence of such a party, no plaintiff having standing to sue brought an action before all rights of action were barred by the statute of limitations.
For the reasons stated, the judgment will be reversed and the case remanded for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] This section was rewritten, effective July 1, 1975, in substantially its present form, Acts 1975, c. 415; the second sentence was added by Acts 1980, c. 386; the fifth sentence was added by Acts 1984, c. 347.
[2] But see Code § 8.01-249(4), effective July 1, 1985.
[3] Code § 8.01-230 was enacted in 1977 as a part of a thorough revision of laws pertaining to civil procedure. It seems unlikely that the revisors intended the harsh result dictated by its clear language: in a property damage case where the breach of duty precedes the resulting injury or damage, the property owner's right to sue may be barred before his property suffers any injury or damage. Indeed, as here, any right of action may be barred before he becomes an owner of the property. It is not our function to amend the law, however, and we must leave to the General Assembly any consideration of change.
[4] This case differs from Chesapeake House on the Bay in one crucial respect. There, the court, on the developer's timely demurrer, had dismissed the unit-owners' association's action because of the association's lack of standing to sue, before unit-owner plaintiffs sought to join as parties. We held that a new plaintiff may not be substituted for an original plaintiff who lacked standing to sue. Here, by contrast, the unit owners' association, in August 1980, moved for leave of court to file an amended motion for judgment adding new parties plaintiff. The developers made no objection to this motion, and an order was entered on August 8, 1980, granting it. When the amended motion for judgment was filed, the developers made no effort to secure dismissal of the new plaintiffs, but joined issue by answering the amended motion for judgment on the merits. The developers filed a motion for summary judgment on June 26, 1981, which failed to raise the question of the unit-owners' association's standing. In a "Brief in Support of Defendant's Motion for Summary Judgment," filed July 22, 1981, the developers raised the issue of standing for the first time. By that time, Code § 55-79.80(bl), which had become effective on July 1, 1981, had rendered the issue moot.