Present:  All the Justices

MARK BRAKE, ET AL.

v.  Record No. 031948

KELLY PAYNE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF EDUARDO CALZADA

C. SCOTT MILLER, ET AL.

v.  Record No. 031949

KELLY PAYNE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF EDUARDO CALZADA          OPINION BY
                                          JUSTICE CYNTHIA D.KINSER
SHEILA COLEY                                June 10, 2004

v.  Record No. 031953

KELLY PAYNE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF EDUARDO CALZADA

MARK GILLESPIE

v.  Record No. 031954

KELLY PAYNE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF EDUARDO CALZADA

     From the Circuit Court of the City of Charlottesville
               Donald E. Kent, Judge Designate


     In these appeals, we once again address a plaintiff's

right to suffer a nonsuit.  The question is: When a

plaintiff who lacks standing to bring an action suffers a

nonsuit, does that nonsuit then impair a proper plaintiff's

absolute right to a first nonsuit in a subsequently filed

new action?  We answer that question in the negative

because the plaintiff without standing and the proper

plaintiff are not suing in the same right.  Thus, we will affirm the circuit court's judgment allowing a nonsuit in the action brought by the proper plaintiff.  However, we will reverse the circuit court's entry of that nonsuit order nunc pro tunc.

MATERIAL FACTS AND PROCEEDINGS

Guadalupe Sias ("Sias"), as the parent and next of kin of Eduardo Calzada ("Calzada"), filed a motion for judgment in the Circuit Court of the City of Charlottesville ("the First Action"), against Kelly Harrison ("Harrison"), an officer with the City of Charlottesville Police Department, alleging claims for assault and battery, and false imprisonment arising out of Calzada's arrest on October 24, 1998.  Harrison filed a demurrer, asserting that the First Action was improperly brought in the name of Calzada by his parent and next of kin.  According to Harrison, the action should have been filed by an executor or administrator of the estate of Calzada, who was deceased.  The circuit court sustained the demurrer but granted Sias leave to amend the motion for judgment to substitute a proper plaintiff. Instead of amending the motion for judgment, Sias elected to suffer a voluntary nonsuit of the First Action.  The circuit court entered an order nonsuiting that action.

2

Subsequently, Kelly Payne ("Payne"), personal representative of the estate of Calzada, filed a motion for judgment in the Circuit Court of the City of Charlottesville ("the Second Action"), naming as defendants Harrison; Mark Brake, an officer with the City of Charlottesville Police Department; Mark Gillespie, an officer "for the County of Albemarle;" Cheryl A. Thompson, a magistrate for the 16th Judicial District; and numerous individuals and entities associated in some capacity with the Albemarle-Charlottesville Regional Jail (the "Jail Defendants").[1]  In addition to the claims for assault and battery, and false imprisonment asserted in the First Action, Payne stated claims alleging gross negligence for conspiring to deprive and depriving Calzada of necessary medical attention, violation of his constitutional rights against unreasonable seizure and loss of liberty without due process of law, use of unnecessary force amounting to an unreasonable search and seizure, commitment to jail for a non-incarcerable offense, and wrongful death.

_____

[1] The Jail Defendants were C. Scott Miller, Frank Johnson, Michael Fehl, Christopher A. Bibb, Keith Bazemore, Fred Kirschnick, Gerald [Patrick] Kinlaw, Eddie Shifflett, Gary P. Ferland, Asiberia Igbari, Jerome Hill, Phillip Barfield, Billy Bingler, John Woodson, Sheila Coley, John R. Isom, Robert Beatty, Albemarle-Charlottesville Regional Jail Authority, Albemarle-Charlottesville Regional Jail Board, and Unknown Named Agents of the Regional Jail and Jail Authority.

Payne did not serve process in the Second Action on any of the defendants. On October 22, 2001, which was one day before the expiration of the twelve-month period after commencement of the Second Action in which timely process should have been served pursuant to the provisions of Code § 8.01-275.1 and Rule 3:3(c), Payne filed a "Notice of Voluntary Non-Suit." Although Payne submitted a proposed nonsuit order to the circuit court, she did not file a praecipe or otherwise schedule a hearing for entry of the nonsuit order. Consequently, the circuit court never entered the order submitted by Payne.

Despite the fact that the Second Action remained open on the court's docket, Payne subsequently filed a third motion for judgment in the Circuit Court of the City of Charlottesville ("the Third Action") on April 19, 2002. Payne asserted basically the same factual allegations and claims as she had stated in the Second Action and named primarily the same individuals as defendants. This time, however, Payne effected service of process on some of the defendants. The Third Action was subsequently removed to the United States District Court for the Western District of Virginia.

After Payne filed the Third Action, Gillespie and most of the Jail Defendants filed notices of special appearance

4

and moved the court to dismiss the Second Action with prejudice because Payne had failed to serve process timely in the Second Action in accordance with the provisions of Code § 8.01-275.1 and Rule 3:3(c). They also objected to Payne's requested nonsuit of the Second Action. Payne then filed a notice in the circuit court, stating her intention to tender the proposed order of nonsuit in the Second Action to the court.

After hearing oral argument on April 16, 2003 with respect to Payne's request for a nonsuit and the defendants' objections,[2] the circuit court concluded that that the Second Action was "a separate and distinct cause of action or claim" from the First Action, and that Payne's request for a nonsuit was thus a request for "a first nonsuit and not a second nonsuit." The court further determined that the order of nonsuit should be entered <u>nunc pro tunc</u> to October 22, 2001, the date Payne originally submitted the proposed order to the court. The circuit court subsequently entered the order of nonsuit as indicated. These appeals followed, which were consolidated for purposes of oral argument and this opinion.

### ISSUES AND ANALYSIS

---

[2] Counsel for Brake and Harrison, as well as counsel for Coley, also appeared at the hearing and objected to the proposed nonsuit order.

The various defendants-appellants raise three issues: (1) whether the circuit court erred in allowing Payne to nonsuit the Second Action; (2) whether the circuit court erred in allowing Payne to suffer a second nonsuit with respect to the defendants who were not served with service of process within 12 months from the date of filing the Second Action as required by Code § 8.01-275.1 and Rule 3:3(c); and (3) whether the circuit court erred by entering the nonsuit order <u>nunc pro tunc</u> to October 22, 2001.[3]

With regard to the first issue, the dispositive question is whether the nonsuit of the First Action by Sias, who lacked standing to bring that action, in any manner affected or impaired Payne's right to a first nonsuit of the Second Action pursuant to the provisions of Code § 8.01-380(B). The defendants assert that, although Sias was not qualified as the personal representative of Calzada's estate when she filed the First Action and thus lacked standing to bring that action, she was nevertheless the real party in interest in both the First Action and the Second Action because she was Calzada's mother and a potential beneficiary under the Death by Wrongful Act statute, specifically Code § 8.01-53. Payne, in contrast,

---

[3] Coley did not raise the second issue in her appeal.

argues that, since "a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the [action]," Chesapeake House on the Bay, Inc. v. Virginia Nat'l Bank, 231 Va. 440, 442-43, 344 S.E.2d 913, 915 (1986), Sias could not have substituted Payne as the plaintiff in the First Action.  Therefore, Payne contends that, while the only remedy was to nonsuit the First Action and to bring a new action in the name of a proper plaintiff, id. at 443, 344 S.E.2d at 915, the First Action was in effect a nullity and the nonsuit of that action should not prejudice Payne's right to suffer a nonsuit of the Second Action under Code § 8.01-380(B).  We agree with Payne.

In Fowler v. Winchester Med. Ctr., Inc., 266 Va. 131, 133, 580 S.E.2d 816, 816 (2003), Rebecca Fowler filed a motion for judgment seeking damages for the wrongful death of her husband.  When Fowler filed the action, she was not qualified as the decedent's personal representative in Virginia, and her appointment as the administrator of her husband's estate in West Virginia had terminated.  Id. at 132-33, 580 S.E.2d at 816.  Several defendants in that action filed motions to dismiss and demurrers asserting that Fowler lacked standing to maintain the wrongful death action and that, therefore, the pendency of the action did

7

not toll the statute of limitations.  Id. at 133, 580 S.E.2d at 816.

Fowler conceded that she did not have standing to maintain the action.  Id., 580 S.E.2d at 817.  However, relying on McDaniel v. North Carolina Pulp Co., 198 Va. 612, 95 S.E.2d 201 (1956), she argued that she was a "real party in interest" and was entitled to the benefit of the tolling provision in Code § 8.01-244(B).  266 Va. at 133, 580 S.E.2d at 817.  This Court disagreed.

Unlike the plaintiff in McDaniel who was qualified in Nevada as the administrator of the decedent's estate when he filed a wrongful death action in Virginia, Fowler was not qualified as her deceased husband's personal representative in Virginia or any other state when she filed the wrongful death action.  Id. at 136, 580 S.E.2d at 818.  Thus, we concluded that Fowler would "never be able to file a new suit as a qualified personal representative and claim that she [was] 'substantially the same party' as the plaintiff in the first suit."  Id. (quoting McDaniel, 198 Va. at 619, 95 S.E.2d at 206).  Accordingly, she was not a "real party in interest" and the pendency of her action did not toll the statute of limitations.  Id.; see also Harbour Gate Owners' Ass'n, Inc. v. Berg, 232 Va. 98, 107, 348 S.E.2d 252, 258 (1986) (an action filed by an

8

entity that lacked standing to sue did not toll the applicable statute of limitations); Chesapeake House, 231 Va. at 442, 344 S.E.2d at 915 (same).

As a corollary principle, "a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the suit." Chesapeake House, 231 Va. at 442-43, 344 S.E.2d at 915; accord Cook v. Radford Cmty. Hosp. Inc., 260 Va. 443, 451, 536 S.E.2d 906, 910 (2000); see also Norfolk Southern R.R. Co. v. Greenwich Corp., 122 Va. 631, 634, 95 S.E. 389, 390 (1918). "Such a substitution amounts to the assertion of a new cause of action." Wells v. Lorcom House Condominiums' Council of Co-Owners, 237 Va. 247, 254, 377 S.E.2d 381, 385 (1989). In that situation, "the sole remedy is a nonsuit followed by a new action brought in the name of a proper plaintiff." Chesapeake House, 231 Va. at 443, 344 S.E.2d at 915.

Contrary to the defendants' argument, Sias was not a real party in interest primarily for two reasons. First, her status as a potential beneficiary under Code § 8.01-53 did not make her a real party in interest for purposes of conferring standing to bring the First Action. Cf. Grinels v. Legg, 208 Va. 63, 66, 155 S.E.2d 56, 59 (1967) (executrix could, as an individual, be substituted as plaintiff in the action brought by her as executrix because

9

"the plaintiff was the real party in interest as the sole distributee of any recovery"). The provisions of Code § 8.01-50(B) allow only the personal representative of the deceased person to bring a wrongful death action. See Horn v. Abernathy, 231 Va. 228, 237, 343 S.E.2d 318, 323 (1986) ("Code § 8.01-50(B) vests the right of action in the decedent's personal representative").

Second, Sias, like Fowler, was not qualified as the personal representative of Calzada's estate in Virginia or any other state when she filed the First Action. Thus, she could not have filed a new suit as a qualified personal representative and claimed that she was "substantially the same party." See Fowler, 266 Va. at 136, 580 S.E.2d at 818. Stated differently, she could not have been substantially the same party because she would not have been

> suing in the same right, as where the second suit is by the personal representative of plaintiff in the first suit; where the first suit was by the original administrator, and the second by his successor; where the first suit was by the original trustee, and the second by his successor in trust.

McDaniel, 198 Va. at 617, 95 S.E.2d at 205 (quoting 54 C.J.S., § 293 at 362). In contrast to Sias, the Nevada administrator in McDaniel was a "real party in interest" because he, along with the administratrix in Virginia,

"were substantially the same plaintiff as the plaintiff in the first action, suing in the same right."  Id. at 619, 95 S.E.2d at 206.

Thus, we hold that Sias and Payne were not "substantially the same parties."  Since Sias did not have standing to bring the wrongful death action, she was not suing in the same right as Payne in the Second Action. Accordingly, Sias' nonsuit of the First Action did not impair Payne's absolute right to one nonsuit of the Second Action under the provisions of Code § 8.01-380(B).  The nonsuit of the Second Action was a first nonsuit, and the circuit court therefore did not err in allowing Payne to suffer a nonsuit of that action.[4]

The only remaining issue is whether the circuit court erred in entering the nonsuit order in the Second Action

---

[4] In light of the conclusion that the nonsuit of the Second Action was a first nonsuit due to Sias' lack of standing to bring the First Action, we do not need to address the defendants' argument that Payne's request to nonsuit the Second Action must be considered a second nonsuit because the "cause of action" asserted in both actions arose out of the same set of operative facts, namely the events surrounding Calzada's seizure, arrest, incarceration, and subsequent death.  Additionally, our conclusion on the first issue renders moot the second issue raised on appeal, that the circuit court erred in allowing a second nonsuit as to those defendants who had not been served with process within 12 months from the date of filing the Second Action.

nunc pro tunc to October 22, 2001.  We have previously

explained the purpose of a nunc pro tunc order:

> [N]unc pro tunc entry should not be made to
> supply an error of the court or to show what the
> court should have done as distinguished from what
> actually occurred. . . .
>
> More specifically, the purpose of a nunc pro
> tunc entry is to correct mistakes of the clerk or
> other court officials, or to settle defects or
> omissions in the record so as to make the record
> show what actually took place.  It is not the
> function of such entry by a fiction to antedate
> the actual performance of an act which never
> occurred, to represent an event as occurring at a
> date prior to the time of the actual event, "or
> to make the record show that which never
> existed."

Council v. Commonwealth, 198 Va. 288, 292-93, 94 S.E.2d

245, 248 (1956) (quoting 21 C.J.S., Courts, § 227(a) at

422, 423); accord Harris v. Commonwealth, 222 Va. 205, 209,

279 S.E.2d 395, 398 (1981).

In the present case, Payne submitted a proposed

nonsuit order to the circuit court on October 22, 2001, but

she did not take any steps at that time to bring the matter

on for a hearing to enter the order.  Consequently, the

circuit court did not hear the motion for a nonsuit or

consider the proposed order until April 16, 2003.  Thus,

the court's nunc pro tunc entry of the nonsuit order

created a fiction because the court was antedating the

performance of an act that did not take place on October

12

22, 2001. A nunc pro tunc order "may be used to make the record speak the truth, but not to make it speak what had not been spoken, even though it ought to have been spoken." Gandy v. County of Elizabeth City, 179 Va. 340, 346, 19 S.E.2d 97, 100 (1942). Thus, we hold that the circuit court erred in entering the nonsuit order nunc pro tunc to October 22, 2001.

CONCLUSION

In summary, Payne's nonsuit of the Second Action was a first nonsuit because Sias lacked standing to bring the First Action. Those two parties were not suing in the same right. Accordingly, the circuit court did not err in allowing Payne to nonsuit the Second Action as a matter of right, but the court did err by entering that nonsuit order nunc pro tunc. Therefore, we will affirm the circuit court's judgment in part, reverse in part, and remand for proper entry of a nonsuit order in the Second Action in accordance with this opinion.

Affirmed in part,
reversed in part,
and remanded.