PRESENT:  All the Justices

DOROTHY HARMON, ADMINISTRATRIX
OF THE ESTATE OF JAMES HENRY HARMON,
DECEASED                                          OPINION BY
                                            JUSTICE G. STEVEN AGEE
v. Record Number 060704                     January 12, 2007

PARVIZ M. SADJADI, M.D., ET AL.

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Malfourd W. Trumbo, Judge

Dorothy L. Harmon ("Harmon"), the personal representative

of James Henry Harmon's ("James") estate, appeals the judgment

of the trial court, which dismissed with prejudice her motion

for judgment seeking redress for an alleged personal injury

suffered by James.  At issue in this case is whether the trial

court erred in finding Harmon's action was barred by the statute

of limitations because it was filed after the one-year period

afforded by Code § 8.01-229(B)(1) expired.  For the reasons set

forth below, we will reverse the judgment of the trial court.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Parviz M. Sadjadi, M.D., is a physician licensed to

practice medicine in the Commonwealth.  On June 6, 2001, Dr.

Sadjadi performed surgery on James at Alleghany Regional

Hospital.[1]  It was alleged that during the surgery, Dr. Sadjadi

---

[1] HCA The Healthcare Company d/b/a Alleghany Regional
Hospital is a Tennessee corporation and Columbia/Alleghany
Regional Hospital, Inc. d/b/a Alleghany Regional Hospital is a
Virginia corporation.  Both corporations are licensed to conduct

and surgical support personnel "lost, left or caused to be left in [James'] body a foreign material consisting of a large laparotomy pad or sponge and closed the incision leaving this foreign material in the decedent's abdominal cavity." Following the surgery, James "became increasingly weak and sick, and suffered severe abdominal pain and dehydration." Five months after the surgery, James was readmitted to Alleghany Regional Hospital for further care and testing. Shortly thereafter, a CT scan identified the laparotomy sponge and, on November 8, 2001, Dr. Sadjadi performed surgery to remove the sponge. Prior to his death on May 1, 2003, James had not filed any legal proceeding arising from these events. James was a resident of West Virginia.

On July 18, 2003, Harmon, as James' surviving spouse, qualified as his personal representative in West Virginia. On October 29, 2003, she filed a motion for judgment in her capacity as James' personal representative in the Circuit Court of Alleghany County ("October 2003 motion for judgment"), although Harmon had not qualified as James' personal representative in Virginia. That action was nonsuited on September 28, 2004.

---

business in Virginia. They and Dr. Sadjadi will be referred to collectively as "the Defendants."

On January 13, 2004, administration of James' estate in West Virginia closed, and Harmon was discharged as James' personal representative. On December 6, 2004, Harmon qualified as James' personal representative in Virginia in the clerk's office of the trial court. On March 24, 2005, Harmon, as personal representative, filed the motion for judgment in the case at bar ("March 2005 motion for judgment"). Like the October 2003 motion for judgment, the March 2005 motion for judgment alleged the Defendants were "negligent in their care of [James]" during the first surgery and post-surgery treatment and diagnosis of James' continued complaints. The Defendants filed, inter alia, a special plea of the statute of limitations contending Harmon's claims were barred by the statute of limitations under Code § 8.01-229(B)(1).[2]

In a January 9, 2006 order, the trial court granted the Defendants' plea in bar and dismissed the case with prejudice.

---

[2] While James died after the malpractice and personal injury allegedly caused by the Defendants, it is important to note that the present suit is not a wrongful death action – it is, instead, a personal injury action for damages allegedly sustained by James prior to his death from other causes. This distinction is important because the tolling provisions of Code § 8.01-229 are inapplicable in wrongful death actions, having been superseded by Code § 8.01-244. Horn v. Abernathy, 231 Va. 228, 237-38, 343 S.E.2d 318, 323-24 (1986); see Dodson v. Potomac Mack Sales & Service, Inc., 241 Va. 89, 93-95, 400 S.E.2d 178, 180-81 (1991) (superseded as to nonsuit tolling provisions only by Acts 1991 ch. 722).

3

In a letter opinion incorporated by reference into the order, the trial court relied on McDaniel v. North Carolina Pulp Co., 198 Va. 612, 95 S.E.2d 201 (1956), and Fowler v. Winchester Med. Ctr., 266 Va. 131, 580 S.E.2d 816 (2003), to rule that the July 18, 2003 West Virginia qualification was the relevant date for determining whether Harmon's suit was barred by Code § 8.01-229(B)(1). The trial court determined that the one-year period within which to file under Code § 8.01-229(B)(1) began to run on July 18, 2003, but the filing of the October 2003 motion for judgment tolled the running of that time period. However, the trial court then held that the tolling ceased when James' estate in West Virginia was closed on January 13, 2004 and Harmon's status as James' personal representative terminated on that date. The trial court concluded that

> [e]ven considering the tolling of the statute of limitations during the pendency of the first suit while [Harmon] was qualified as decedent's personal representative in West Virginia, the present action was filed more than a year after [Harmon's] qualification as the administrator of her husband's estate in West Virginia and therefore is dismissed as barred by the statute of limitations.

We awarded Harmon this appeal.

II. ANALYSIS

4

Harmon argues the March 2005 motion for judgment is timely for two reasons.[3] First, she asserts the motion for judgment was timely under Code § 8.01-229(B)(1)[4] because it was filed within one year of her December 6, 2004 qualification as James' personal representative in Virginia. Alternatively, Harmon avers that Code §§ 8.01-229(B)(1) and -229(B)(6), when read together, permit a personal representative to file suit up to three years after the decedent's death.

Harmon asserts the term "qualification" as used in Code § 8.01-229(B)(1) necessarily refers to the qualification of a personal representative in Virginia because an individual who is

---

[3] On brief, Harmon raises a third argument supporting the timeliness of the March 2005 motion for judgment based on Code § 8.01-229(E)(3). However, our review of the record shows Harmon failed to make this argument at trial, and we will not consider it for the first time on appeal. Rule 5:25; Faulknier v. Shafer, 264 Va. 210, 218 n.6, 563 S.E.2d 755, 760 n.6 (2002).

[4] Code § 8.01-229(B)(1) states:

> If a person entitled to bring a personal action dies with no such action pending before the expiration of the limitation period for commencement thereof, then an action may be commenced by the decedent's personal representative before the expiration of the limitation period including the limitation period as provided by subdivision E 3 or within one year after his qualification as personal representative, whichever occurs later.

Neither party asserts the March 2005 motion for judgment was timely under the original two-year statute of limitations period in Code § 8.01-243(A) and (C) within which James could have personally brought a cause of action against the Defendants. Instead, the case focuses on the provision of Code § 8.01-229(B)(1) permitting a cause of action to be filed within one year of the qualification of a decedent's personal representative.

5

only qualified in a foreign jurisdiction "is not a proper party to sue or be sued in Virginia." Based on that reading of Code § 8.01-229(B)(1), Harmon maintains the March 2005 motion for judgment was timely because it was filed within one year of her December 6, 2004 qualification as James' personal representative in Virginia.

Harmon contends further that even if Code § 8.01-229(B)(1) refers to qualification outside Virginia, her March 2005 motion for judgment was timely because the running of the statutory period was tolled during the pendency of the suit commenced by the October 2003 motion for judgment. She contends McDaniel "stands for the proposition that a personal representative qualified in a foreign jurisdiction who sues in Virginia prior to qualification in Virginia, tolls the statute of limitation during the pendency of the suit filed before his or her qualification in Virginia." Anticipating the Defendants' argument based on Fowler, Harmon distinguishes that case because "[a]t the time Fowler filed the Virginia suit, she was not qualified [as the decedent's personal representative] in any jurisdiction." By contrast, Harmon notes that she was qualified as James' personal representative in West Virginia when she filed the October 2003 motion for judgment.

Harmon thus asserts as a consequence that the one-year period under Code § 8.01-229(B)(1) began running on July 18,

6

2003, when she qualified as James' personal representative in West Virginia.  After running for three months and ten days, the statute of limitations was tolled once she filed the October 2003 motion for judgment and remained tolled until September 28, 2004, when that cause of action was nonsuited.  The statutory period then ran from September 28, 2004 until the March 2005 motion for judgment was filed, a period of just under six months.  Harmon thus contends the statutory period ran for just over nine months by the time the March 2005 motion for judgment was filed, making it timely within the one-year period under Code § 8.01-229(B)(1).

Harmon's second argument supporting the timeliness of the March 2005 motion for judgment is that Code §§ 8.01-229(B)(1) and -229(B)(6),[5] when read together, give a personal representative "up to three years after the death of the decedent to file suit."  Harmon cites "the legal logic, . . . not the facts" of Douglas v. Chesterfield County Police Dept., 251 Va. 363, 467 S.E.2d 474 (1996), in which the Court explained that the interplay of Code §§ 8.01-229(B)(1) and -229(B)(6)

---

[5] Code § 8.01-229(B)(6) states:
If there is an interval of more than two years between the death of any person in whose favor or against whom a cause of action has accrued or shall subsequently accrue and the qualification of such person's personal representative, such personal representative shall, for the purposes of this chapter, be deemed to have qualified on the last day of such two-year period.

7

fixes "an outer time limit of three years" for the filing of a cause of action by a qualified personal representative.  Id. at 367, 467 S.E.2d at 476.  Harmon contends that under these statutes she had until May 1, 2006 – three years after James' death – to file the cause of action, so her March 2005 motion for judgment was timely.

The Defendants respond that Harmon's proposed interpretation, limiting the term "qualification" in Code § 8.01-229(B)(1) to qualification in Virginia "ignore[s] the clear and unambiguous language of the statute" by giving it a "more narrow meaning than there exists in the statutory text." They contend "qualification" in Code § 8.01-229(B)(1) is "not limited in scope or restricted to qualification in a particular state," and it would be improper for the judiciary to add such a limitation.  Moreover, they allege because "foreign qualification can toll the statute of limitations in Virginia [under McDaniel, it should] also be sufficient to trigger the one-year statute of limitations" under Code § 8.01-229(B)(1).

The Defendants thus claim the July 18, 2003 West Virginia qualification is the proper date for determining whether the March 2005 motion for judgment was timely.  They agree that under McDaniel the statutory period was tolled when Harmon filed the October 2003 motion for judgment.  However, they maintain once Harmon "was discharged as the executrix in West Virginia

8

[on January 13, 2004], the statute of limitations was no longer tolled." This is so, they assert, because the Court in Fowler recognized that an individual who is not a qualified personal representative "could not obtain the benefit of the tolling of the statute of limitations during the pendency of a suit filed in Virginia." The Defendants argue that Harmon thus lost the benefit of the tolling once she was discharged as James' qualified personal representative. Therefore, the Defendants conclude that the statutory period was only tolled for 76 days (from the filing of the October 2003 motion for judgment to the closure of the West Virginia estate on January 13, 2004), and thus that, counting from Harmon's July 18, 2003 West Virginia qualification, the March 2005 motion for judgment was not timely under Code § 8.01-229(B)(1). In other words, they contend the combined time period from July 18, 2003 to October 29, 2003, and January 13, 2004 to March 24, 2005 (seventeen months and twenty-two days) exceeds the one-year statutory period within which Code § 8.01-229(B)(1) required suit to be brought.

The Defendants counter Harmon's second argument by asserting that Code § 8.01-229(B)(6) is inapplicable based on the plain language of the statute. They contend Code § 8.01-229(B)(6) only applies when a personal representative qualifies more than two years after the decedent's death, whereas Harmon

9

qualified as James' personal representative in both West Virginia and Virginia less than two years after his death.

This case presents a pure question of law, which we review de novo.  Sheets v. Castle, 263 Va. 407, 410, 559 S.E.2d 616, 618 (2002).  As an initial matter, Harmon's argument based on the interplay of Code §§ 8.01-229(B)(1) and –229(B)(6) fails because Code § 8.01-229(B)(6) does not apply in this case.  The plain language of Code § 8.01-229(B)(6) addresses situations when "there is an interval of more than two years between the death of any person in whose favor or against whom a cause of action has accrued or shall subsequently accrue and the qualification of such person's personal representative." (Emphasis added.)  Similarly, this Court's analysis in Douglas referred to the interplay of Code §§ 8.01-229(B)(1) and –229(B)(6) where the facts of the case implicated the provisions of both statutes.  251 Va. at 365-67, 467 S.E.2d at 475-76. Harmon's qualifications in West Virginia and Virginia both occurred less than two years after James' death.  Accordingly, Code § 8.01-229(B)(6) is inapplicable by its plain terms.

Turning to the application of Code § 8.01-229(B)(1), we note the trial court's judgment in this case was based on our decisions in McDaniel and Fowler.  In McDaniel, the individuals qualified as the decedent's personal representative in Virginia filed a wrongful death action in Virginia that the defendants

10

claimed was barred by the statute of limitations. The plaintiff contended that suit was timely because the statute of limitations had been tolled during the pendency of a previous suit alleging the same cause of action, which had been filed in Virginia by one of the same individuals when he was only qualified as the decedent's personal representative in Nevada. 198 Va. at 613-14, 95 S.E.2d at 202-03. The Court in McDaniel held that under these circumstances the statute of limitations was tolled during the pendency of an action filed by a personal representative who is qualified in a foreign jurisdiction, but not qualified in Virginia, because "the real party in interest remained the same." Id. at 619-20, 95 S.E.2d at 206-07.

Citing McDaniel, the trial court determined that the one-year period under Code § 8.01-229(B)(1) began to run when Harmon qualified as James' personal representative in West Virginia on July 18, 2003. By implication, the trial court read "qualification" under Code § 8.01-229(B)(1) as inclusive of qualification in any jurisdiction. The trial court then determined, also relying on McDaniel, that the filing of the October 2003 motion for judgment tolled the statutory period. However, once Harmon's qualification in West Virginia terminated on January 13, 2004, the trial court reasoned that any tolling ceased, based on our decision in Fowler, because Harmon was then without authority as a personal representative in any

11

jurisdiction. As a result, the trial court concluded that by the time Harmon qualified in Virginia and filed the March 2005 motion for judgment more than one year had elapsed since her 2003 qualification in West Virginia. Thus, the trial court ruled Code § 8.01-229(B)(1) barred the March 2005 motion for judgment as untimely.

Resolution of the case at bar has caused us to re-examine the foundation of our holding in McDaniel. In doing so, we have concluded that our decision in McDaniel mistakenly deviated from the application of the doctrine of standing and was a flagrant error. Accordingly, we will overrule our decision in McDaniel for the reasons set forth below.

Our jurisprudence is clear that when a party without standing brings a legal action, the action so instituted is, in effect, a legal nullity. In Chesapeake House on the Bay, Inc. v. Virginia National Bank, 231 Va. 440, 344 S.E.2d 913 (1986), we addressed the lack of standing by an initial plaintiff who attempted to cure the legal nullity of its pleading by substituting a party with standing. We unequivocally held that "a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the suit." Id. at 442-43, 344 S.E.2d at 915; see also Bardach Iron and Steel Co. v. Tenenbaum, 136 Va. 163, 173-74, 118 S.E. 502, 505 (1923). When a plaintiff lacks standing, "the sole remedy is a nonsuit

12

followed by a new action brought in the name of a proper plaintiff."  Chesapeake House, 231 Va. at 443, 344 S.E.2d at 915 (citing Tenenbaum, 136 Va. at 173, 118 S.E. at 505).

In Harbour Gate Owners' Ass'n v. Berg, 232 Va. 98, 348 S.E.2d 252 (1986), we determined that an initial motion for judgment filed by a plaintiff who lacked standing to bring that action was of no legal effect as to the statute of limitations applicable to a second action brought by a plaintiff with standing.  Id. at 107, 348 S.E.2d at 358.  The "original motion for judgment did nothing to toll the running of the statute of limitations" as to the second suit brought by subsequent plaintiffs with standing.  Id.

In McDaniel, we acknowledged that the Nevada executor had no standing to bring the first motion for judgment filed in Virginia since he was without legal authority to act in Virginia.  "[I]t has been established in this jurisdiction that a foreign administrator, who has acquired no status in Virginia, is without authority to institute in his official capacity any action or suit in the courts of this State."  198 Va. at 615, 95 S.E.2d at 204 (citing Moore v. Smith, 177 Va. 621, 624, 15 S.E.2d 48, 48 (1941) and Fugate v. Moore, 86 Va. 1045, 1047, 11 S.E. 1063, 1063 (1890)).  That determination should have ended the decisional process in McDaniel because the Nevada executor's initial motion for judgment, since he lacked standing to bring

13

the action, was a nullity with no legal effect.  As this Court acknowledged in McDaniel, a judgment for the foreign personal representative in the first suit would have been reversible error because "[t]hat rule is not in question here."  Id. (noting the first suit that had been brought solely by the Nevada executor had been dismissed for failure to be brought by an individual qualified in Virginia); e.g., Smith, 177 Va. at 624, 15 S.E.2d at 48 (Tennessee administrator not qualified in Virginia was without authority to institute suit in Virginia).

In McDaniel, this Court nonetheless ignored the Nevada personal representative's lack of standing and the invalidity of the first motion for judgment.  Citing the decision of the West Virginia Supreme Court in Siever v. Klots Throwing Co., 132 S.E. 882 (W. Va. 1926), this Court adopted the premise that the plaintiffs in the two actions (the Nevada personal representative in the first suit and the Virginia personal representative in the second) were substantially the same parties:

> McDaniel, Jr., and Mary M. Persinger, personal representatives of the deceased, as plaintiffs in the second action, were substantially the same plaintiff as the plaintiff in the first action, suing in the same right.  Only the name of a co-plaintiff was added in the second action.  Whatever the name of the plaintiff, the real party in interest remained the same; the suit was instituted in the same right; and the cause of action was the same.

McDaniel, 198 Va. at 617, 619, 95 S.E.2d at 205-06.

14

Citing Norwood v. Buffey, 196 Va. 1051, 86 S.E.2d 809 (1955), this Court then concluded that since the first action had not been adjudicated on the merits, the ameliorative purpose of former Code § 8-634 (now Code § 8.01-244) augured for granting a status to the otherwise defective first action for the purposes of tolling the statute of limitations. 198 Va. at 619-20, 95 S.E.2d at 206-07. In other words, since this Court deemed the first and second plaintiffs to be, in effect, the same party in interest, and since the first suit was "dismissed without determining the merits of such action," the Court deemed tolling to have occurred when the first suit was filed. The Court reached this conclusion even though no Virginia case had given effect to a prior proceeding that was a legal nullity because the plaintiff lacked standing to bring the proceeding.

Since rendering the McDaniel opinion in 1956, we have not examined or applied McDaniel in any case when lack of standing has been dispositive of the case. We have, however, confirmed on many occasions since McDaniel that no legal effect is accorded an action filed by a party without standing. E.g., Braddock, L.C. v. Board of Supervisors, 268 Va. 420, 425-26, 601 S.E.2d 552, 554-55 (2004) (action brought by party lacking standing was a "nullity" that could not be resurrected by adding parties with standing); Cook v. Radford Community Hosp., Inc.,

15

260 Va. 443, 451, 536 S.E.2d 906, 910 (2000) (Rule 1:8 "has always been subject to the limitation that a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the suit. Statutes relating to misjoinder and nonjoinder are not applicable in such situations, and the sole remedy is a nonsuit followed by a new action brought in the name of a proper plaintiff."); Wells v. Lorcom House Condominiums' Council of Co-Owners, 237 Va. 247, 253-54, 377 S.E.2d 381, 385 (1989) ("[T]he substance of the effort to file the amended motion was to substitute new parties plaintiff, who would have standing to maintain the action, in lieu of a plaintiff [who] lacked standing. Such a substitution amounts to the assertion of a new cause of action and an order permitting such substitution constitutes reversible error.").

The closest case to rely on the tolling effect of McDaniel is Scott v. Nance, 202 Va. 355, 117 S.E.2d 279 (1960), which is substantially distinguishable. In Scott, a plaintiff with clear legal standing filed a motion for judgment against a defendant who was a convicted felon and currently incarcerated. The motion for judgment was brought directly against the convict and did not name his committee as otherwise required by then Code § 53-307 (current Code § 53.1-222). Upon Scott's plea in abatement that no action could be brought against him individually while he was incarcerated, the trial court

16

dismissed the initial proceeding.  A subsequent proceeding by the same plaintiff was instituted against Scott personally following his release from custody, but Scott argued the statute of limitations had expired.  The plaintiff contended that the initial filing had tolled the statute of limitations during its pendency.  Id. at 356-57, 117 S.E.2d at 279-80.

Even though there was no issue as to the legal standing of the plaintiff, this Court cited McDaniel by analogy to hold

> Scott was the real party in interest in each of the motions for judgment involved. . . .
>     We perceive no good reason why the principle applied where a plaintiff is under disability as a foreign administrator should not be applied where a defendant is under a disability because of his confinement in the penitentiary.

202 Va. at 359, 117 S.E.2d at 281-82.  We thus concluded that the first motion for judgment tolled the statute of limitations.  However, in Scott, the first suit was not a legal nullity due to the plaintiff's lack of standing, nor did the defendant raise the issue of standing.

In Wackwitz v. Roy, 244 Va. 60, 418 S.E.2d 861 (1992), a nonresident personal representative was awarded a judgment in a wrongful death action even though she never qualified in Virginia.  However, the defendant failed to object to the nonresident plaintiff's lack of standing at trial and first raised the issue on appeal.

17

The defendant in Roy claimed the standing issue was one of subject matter jurisdiction and could thus be raised at any time. Citing Moore v. Smith, 177 Va. 621, 624, 15 S.E.2d 48, 48 (1941), in which "we said that a nonresident administrator is 'without authority' to institute an action in Virginia," this Court stated in Wackwitz that the opinion in Moore "deemed the issue no longer to be jurisdictional." 244 Va. at 63, 418 S.E.2d at 863. We then cited McDaniel only to show that case "confirmed that an action brought by a non-resident administrator is not void for want of jurisdiction." Id. at 63-64, 418 S.E.2d at 863-64. Accordingly, we applied Rule 5:25 to the defendant's claim on appeal, holding that the defendant waived the plaintiff's lack of standing on appeal by failing to raise the issue at trial. Id. at 64, 418 S.E.2d at 864.

In Fowler, the plaintiff was not qualified as a personal representative in any jurisdiction at the time she filed a motion for judgment in a wrongful death action. Although we acknowledged the plaintiff had no standing, we nonetheless decided the case under McDaniel by noting that the plaintiff could not be " 'substantially the same party' as the plaintiff in the first suit" because she was not qualified as a personal representative anywhere. 266 Va. at 136, 580 S.E.2d at 818.

Lastly, we cited McDaniel in the recent case of Brake v. Payne, 268 Va. 92, 597 S.E.2d 59 (2004). In that case, a

18

decedent's parent, without qualification as a personal representative in any state, filed suit for assault, battery, and false imprisonment. Upon the defendant's demurrer that the decedent's parent lacked standing to bring the action, a non-suit was entered. Subsequently, a third party qualified as the decedent's personal representative in Virginia and brought a second motion for judgment restating the original claims and adding several others, including a claim under the wrongful death statute. The defendant then argued that the second action was time barred because the first action could not toll the statute of limitations due to the fact that it was brought by a party without standing and was therefore a legal nullity. Id. at 95-97, 597 S.E.2d at 60-62.

We agreed with the defendant, citing our decisions in Berg and Chesapeake House on the Bay, Inc. However, we also distinguished McDaniel because the decedent's parent could not satisfy the real party in interest test due to the fact that she "was not qualified as the personal representative of [the decedent's] estate in Virginia or any other state when she filed the First Action. . . . Thus, she could not have filed a new suit as a qualified personal representative and claimed that she was 'substantially the same party.' " Id. at 99, 597 S.E.2d at 63 (citing Fowler, 266 Va. at 136, 580 S.E.2d at 818).

19

In summary, our citations to McDaniel since its issuance reveal that we have not readdressed the issue raised in McDaniel. More importantly, we have not relied on McDaniel as the basis for a holding on the merits in any case that a plaintiff without legal standing can nonetheless file a legal action that has the effect of tolling the statute of limitations.

As a decision issued by "a court of last resort . . . after full deliberation upon the issue," McDaniel is entitled to respect under the doctrine of stare decisis unless it contains "flagrant error or mistake." Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987) (citing Kelly v. Trehy, 133 Va. 160, 169, 112 S.E. 757, 760 (1922)). When such a flagrant error or mistake is found,

> [o]ur strong adherence to the doctrine of stare decisis does not . . . compel us to perpetuate what we believe to be an incorrect application of the law . . . . Indeed, this Court's obligation to reexamine critically its precedent will enhance confidence in the judiciary and strengthen the importance of stare decisis in our jurisprudence. Although we have only done so on rare occasions, we have not hesitated to reexamine our precedent in proper cases and overrule such precedent when warranted.

Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997).

The rule set forth in McDaniel is clearly a mistake and a flagrant error that we will not perpetuate. We can discern no basis to carve out an exception to our otherwise clear precedent

20

that lack of standing causes a party's legal proceeding to be of no legal effect. There is no statutory or policy basis to accord foreign personal representatives not qualified in Virginia an exception to the doctrine of standing that otherwise applies to all other plaintiffs. Therefore, we are not bound by stare decisis and consequently overrule our decision in McDaniel.

Accordingly, Harmon, as a foreign personal representative not qualified in Virginia, had no legal standing to file the October 2003 motion for judgment. That motion for judgment had no legal effect and, as a nullity, could not act to toll the running of the statutory period applicable under Code § 8.01-243. As a corollary, "qualification" under Code § 8.01-229(B)(1) must be read to mean only qualification as a personal representative in Virginia because only such a party can have legal standing to bring an action in Virginia courts as contemplated by Code § 8.01-229(B)(1). The General Assembly could not have intended "qualification" to include foreign qualification, as that would embrace persons with no legal standing, and thus no right or capacity to commence a valid action.

As a consequence, Harmon's qualification in West Virginia could not trigger the running of the one-year period under Code § 8.01-229(B)(1). Neither her qualification in West Virginia

21

nor the filing of the October 2003 motion for judgment had any legal effect in Virginia because both were a legal nullity as relates to any Virginia legal action.  The one-year statutory period under Code § 8.01-229(B)(1) commenced upon Harmon's qualification as personal representative of James' estate in Virginia on December 4, 2004.  The statute required the motion for judgment be filed within one year of that date.  As the March 2005 motion for judgment was filed within one year of December 4, 2004, that motion for judgment satisfied the time requirements of Code § 8.01-229(B)(1).  Accordingly, the March 2005 motion for judgment was timely filed and the trial court erred in sustaining the Defendant's plea of the statute of limitations.

## III.  CONCLUSION

For the reasons set forth above, we will reverse the judgment of the trial court and remand the case for further proceedings.

<u>Reversed and remanded</u>.